OPINION
This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, David Gibbs, appeals from the trial court's denial of his post-sentence motion to withdraw a guilty plea.
On December 31, 1991, appellant appeared with counsel in the trial court and pled guilty to one count of aggravated vehicular homicide in violation of R.C. 2903.06. By entering a plea of guilty, appellant admitted that he recklessly caused the death of another while operating a motor vehicle. In the process, appellant also conceded that he committed the offense while under the influence of alcohol, thereby making him ineligible for any type of probation pursuant to R.C. 2903.06(C).
Following a presentence investigation, the trial court conducted the sentencing hearing on March 10, 1992. At that time, the trial court ordered appellant to serve an indefinite term of four to ten years in prison, along with a $2,000 fine. Appellant never filed any direct appeal following his conviction and sentencing.
Almost six years later, on January 28, 1998, appellant filed a pro se motion to withdraw his guilty plea pursuant to Crim.R. 32.1. As grounds for the motion, appellant alleged that he had been led to believe that he would be eligible for probation if he pled guilty to the offense as charged. Appellant claimed that he would not have entered the guilty plea if he had known that he was ineligible for probation as a matter of law due to the fact that he was under the influence of alcohol at the time of the commission of the aggravated vehicular homicide.
The trial court appointed a public defender to represent appellant at a hearing on the motion. During this proceeding, it was established that the record contained a document captioned as "Findings on Guilty Plea to Amended Indictment," which essentially functioned as appellant's written guilty plea and the acceptance of such plea by the trial court. While this instrument did appear to suggest that appellant was eligible for probation, it also clearly indicated that the trial court could impose a sentence of two to ten years in prison.
It could not be determined whether the trial court had orally informed appellant that he was ineligible for probation during the plea hearing on December 31, 1991. A significant period of time had elapsed between appellant's guilty plea and his subsequent filing of the Crim.R. 32.1 motion in January 1998. During this interval, the trial judge who had conducted the plea colloquy with appellant had retired from the bench. In addition, the court reporter who had recorded the hearing had left her employment and could not be located by the prosecutor's office. As a result, neither the state nor appellant could produce a transcript of the plea proceeding.
Upon consideration of the Crim.R. 32.1 motion, the trial court overruled appellant's request to withdraw his guilty plea on October 21, 1998. In its judgment entry, the trial court concluded that appellant had not satisfied his burden of demonstrating the existence of a manifest injustice. In doing so, the trial court noted that appellant had not introduced any evidence that he relied upon his supposed eligibility for probation when entering the guilty plea. Moreover, the trial court observed that the six-year lapse of time between appellant's sentencing and his filing of the Crim.R. 32.1 motion adversely impacted his credibility as it related to his purported reliance on the written plea instrument. Finally, the trial court suggested that the issue raised in the motion could be viewed as barred by the doctrines of res judicata and laches.
From this judgment, appellant filed a timely notice of appeal with this court. Through appointed counsel, he now asserts the following assignments of error:
 "[1.] The trial court erred in denying the appellant's motion to withdraw his guilty plea because the record clearly reveals that the appellant was not properly advised about his probation eligibility.
 "[2.] The trial court erred in finding that the appellant's motion to withdraw his guilty plea was barred by the doctrine of res judicata.
 "[3.] The trial court erred in finding that the appellant's motion to withdraw his guilty plea was barred by the doctrine of laches."
In his first assignment of error, appellant posits that the trial court erred by denying his Crim.R. 32.1 motion because "the record clearly reveals that the appellant was not properly advised about his probation eligibility." According to appellant, the trial court should have allowed him to withdraw his guilty plea, thereby vacating his conviction and sentence.
At the time appellant filed his motion, Crim.R. 32.1 read as follows:
 "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."[1]
 In order to withdraw a guilty plea after the imposition of sentence, a defendant must demonstrate that such withdrawal is necessary to correct a manifest injustice. Crim.R. 32.1; State v. Smith (1977), 49 Ohio St.2d 261, paragraph two of the syllabus; State v. Barnett (1991), 73 Ohio App.3d 244, 250. The burden of establishing the existence of a manifest injustice is upon the defendant seeking the vacation of the plea. Smith, 49 Ohio St.2d 261, at paragraph one of the syllabus; State v. Blatnik (1984), 17 Ohio App.3d 201, 202.
A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility, and weight of the movant's assertions in support of the motion are matters to be resolved by that court. State v.Stumpf (1987), 32 Ohio St.3d 95, 104; Smith, 49 Ohio St.2d 261, at paragraph two of the syllabus; State v. Hawley (Apr. 3, 1998), Geauga App. No. 97-G-2052, unreported, at 2, 1998 WL 257051. An appellate court's review is limited to a determination of whether the trial court abused its discretion by denying the motion to withdraw a guilty plea. Barnett, 73 Ohio App.3d at 250; Blatnik,17 Ohio App.3d at 202; State v. Peterseim (1980), 68 Ohio App.2d 211,213; Hawley, 1998 WL 257051, at 2. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. State v. McDade (Sept. 25, 1998), Lake App. No. 97-L-059, unreported, at 7, 1998 WL 682360, citing State v.Montgomery (1990), 61 Ohio St.3d 410, 413, and State v. Adams
(1980), 62 Ohio St.2d 151, 157.
In the case sub judice, appellant maintains that he should have been allowed to withdraw his guilty plea because he was misled as to his potential eligibility for probation. In felony cases, Crim.R. 11(C)(2)(a) imposes a duty on the trial court to address the defendant personally in the process of determining that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation.[2]
In arguing that he was misled as to his potential eligibility for probation, appellant points to the written plea agreement which he signed when entering the plea on December 31, 1991. The document contained the following statement: "Furthermore, I have been informed by the Court and understand that I am (not) eligible for probation[.]" The word "not" was interlineated with an ink pen, thereby providing the basis for appellant's claim that he believed that he was eligible for probation when he pled guilty to the charge of aggravated vehicular homicide.
Notwithstanding appellant's assertion to the contrary, the record does not definitively demonstrate that appellant was categorically misadvised about his eligibility for probation. The document in question is a standardized plea form. The word "not" appears in parentheses for a reason, to wit: so that it may be stricken from the statement about probation eligibility as necessary depending on the circumstances of a particular case.
In the instant matter, we will assume arguendo that the word "not" contained the ink strikethrough when appellant entered the written guilty plea. Although appellant would have us believe that this form constitutes irrefutable proof that he was misinformed about his potential probation eligibility, we beg to differ.
As explained previously, no transcript exists of the December 31, 1991 plea hearing at which appellant pled guilty to committing aggravated vehicular homicide. There is, therefore, no real way to know whether the trial court properly informed appellant that he was not eligible for probation. Indeed, the trial court may have correctly advised appellant of the nonprobationary nature of the offense to which he was pleading guilty. Without the benefit of a transcript, this court is simply unable to determine whether the trial court accurately informed appellant that he was not eligible for probation during the Crim.R. 11 plea colloquy. No attempt was made to submit an App.R. 9(C) or 9(D) statement to overcome this void in the record.
At this point, we must distinguish the present case from our prior decision in State v. Green (Oct. 24, 1997), Trumbull App. No. 96-T-5418, unreported, 1997 WL 664402 ("Green II"). Appellant cited Green II in the trial court as supporting his motion to withdraw his guilty plea. In Green II, Green pled guilty to two counts of felonious assault with accompanying firearm specifications. In doing so, Green signed a written plea instrument which contained the following language: "Furthermore, I have been informed by the Court and understand that I am () eligible for probation * * *." In reality, Green was not eligible for probation given the mandatory nature of the firearm specifications to which he had pled guilty. Consequently, the word "not" should have been typewritten or inserted by hand into the parentheses on the plea form.
Following his plea hearing, Green failed to appear for sentencing. He was arrested more than a year later. When brought before the trial court, Green expressly indicated that he wanted to withdraw his prior guilty pleas because he was "very definitely innocent." The trial court summarily declined his request and proceeded to sentence Green. On appeal, this court reversed the trial court's judgment, thereby ordering the court below to hold a hearing on Green's Crim.R. 32.1 motion to withdraw his guilty pleas. See State v. Green (Oct. 27, 1995), Trumbull App. No. 94-T-5103, unreported, 1995 Ohio App. LEXIS 4768 ("Green I").
On remand, the trial court conducted a hearing on Green's motion. At this proceeding, defense counsel asserted that the trial court had failed to notify Green during the prior sentencing hearing that he was ineligible for probation as required by Crim.R. 11(C)(2)(a). The trial court, however, denied the motion upon finding that Green's guilty pleas were voluntary.
On appeal in Green II, this court again reversed the trial court's judgment. In doing so, we noted that the written plea instrument appeared to suggest that Green was eligible for probation. Given this, we turned to the transcript of the sentencing hearing. Upon doing so, we adjudged that the trial court had not corrected this misimpression during the Crim.R. 11 plea colloquy by expressly informing Green that he was pleading guilty to nonprobational offenses.
Upon review, it is clear that our decision in Green II
is easily distinguishable from the instant appeal. The most obvious difference is that Green made an oral motion to withdraw his guilty pleas at his sentencing hearing (i.e., before he was actually sentenced by the trial court). It is well-settled that a motion to withdraw a plea of guilty or no contest filed beforesentencing should be freely allowed. State v. Xie (1992),62 Ohio St.3d 521, 527. Even then, however, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing in the absence of a reasonable and legitimate basis for the withdrawal. Id.
In the case at bar, appellant waited almost six years before filing his Crim.R. 32.1 motion. As indicated previously, a defendant must demonstrate that withdrawal is necessary to correct a manifest injustice in order to withdraw a guilty plea after the imposition of sentence.
Moreover, another obvious distinction can be made betweenGreen II and the present matter. In the former, a transcript existed of the sentencing hearing. A review of that transcript revealed that the trial court did not explicitly inform Green that he was ineligible for probation. By contrast, appellant was unable to produce a transcript of the sentencing hearing in his case. As stated earlier, in the absence of a transcript, this court can not determine whether the trial court accurately informed appellant that he was not eligible for probation during the Crim.R. 11 plea colloquy.
Thus, the scenario presented by Green II is factually distinguishable from the instant case. The trial court correctly determined that this court's opinion in Green II did not require the granting of appellant's motion to withdraw his guilty plea.
Again, it must be reiterated that the trial court's decision to deny the Crim.R. 32.1 motion is subject to review only for an abuse of discretion. Upon engaging in the appropriate review, we conclude that the trial court did not abuse its discretion by denying the motion. We arrive at this conclusion for several reasons.
First, appellant offered no evidence whatsoever that he relied upon the misstatement in the written plea instrument when entering his guilty plea. The mere fact that the plea form inaccurately stated that appellant was eligible for probation is not, by itself, sufficient to create a manifest miscarriage of justice. Quite simply, appellant did not establish a nexus, or causal connection, between the misstatement and his guilty plea. In the absence of any evidence whatsoever to suggest that appellant relied to his detriment on the representation that he was eligible for probation, there is nothing upon which to conclude that his plea was less than knowing, intelligent, and voluntary.
Second, the document accurately stated the potential prison term that appellant faced by virtue of his guilty plea. Regardless of any potential eligibility for probation, appellant was on notice and understood that he faced an indefinite term of two to ten years in prison if the trial court accepted the plea. As it turned out, the trial court sentenced appellant to four to ten years in prison, which was clearly within the parameters allowed by law.
Finally, we wholeheartedly agree with the trial court that the lapse of time between appellant's sentencing and the filing of the Crim.R. 32.1 motion seriously undermined his credibility. As noted by the trial court, it was manifestly apparent to appellant that he had not been given probation at the very moment that the court sentenced him to prison on March 10, 1992. It defies reason and basic common sense to suggest that it thereafter took appellant almost six years to investigate and discover that he was not eligible for probation as a matter of law because he had pled guilty to committing aggravated vehicular homicide while under the influence of alcohol.
As noted earlier, it is within the province of the trial court to assess the good faith, credibility, and weight of the movant's assertions in a Crim.R. 32.1 motion. In this case, the trial court determined that appellant's claim that he relied upon the belief that he would be eligible for probation lacked credibility.
Upon review, we agree with the trial court's conclusion in this regard. Although Crim.R. 32.1 does not set forth a time limit during which a motion to withdraw a plea of guilty must be made after the imposition of sentence, the Supreme Court of Ohio has expressly held that "[a]n undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim.R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." Smith, 49 Ohio St.2d 261, at paragraph three of the syllabus.
In the present matter, the lapse of nearly six years totally undercuts appellant's assertion that he pled guilty because he thought that he was eligible for probation. Any defendant who had truly been led astray by an erroneous statement in a written plea instrument regarding his potential eligibility for probation would have challenged the validity of his guilty plea long before he had endured six years of incarceration in a penal institution.
In conclusion, appellant has not demonstrated that withdrawal of his guilty plea is necessary to correct a manifest injustice. Appellant's claimed reliance on the written plea instrument is simply not credible. In light of the fact that appellant bore the burden of establishing the existence of a manifest injustice, the trial court did not abuse its discretion by denying his Crim.R. 32.1 motion. The first assignment is without merit.
In his second and third assignments of error, respectively, appellant proposes that the trial court erred in relying in part on the doctrines of res judicata and laches when overruling his motion to withdraw his guilty plea. Appellant, in essence, contends that neither doctrine was applicable under the circumstances of the case. From his perspective, the trial court's invocation of these doctrines as further justification for denying the Crim.R. 32.1 motion constituted reversible error.
As mentioned earlier, the trial court's primary basis for overruling the motion was the fact that appellant failed to satisfy his burden of demonstrating the existence of a manifest injustice as required by Crim.R. 32.1. After stating this holding in its judgment entry, the trial court went on to suggest that the issue raised by appellant in the motion (i.e., that he relied upon the misstatement in the written plea document regarding probation eligibility when entering the guilty plea) was also barred by the doctrines of res judicata and laches.
With regard to the former, the trial court observed that the doctrine of res judicata would have barred appellant from raising the exact same issue in a petition for postconviction relief filed under R.C. 2953.21. The Supreme Court of Ohio has held:
 "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment."
State v. Szefcyk (1996), 77 Ohio St.3d 93, syllabus, approving and following State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
While acknowledging that res judicata is usually invoked in the context of a postconviction relief petition, the trial court concluded that the doctrine provided further support for denying appellant's motion to withdraw his guilty plea. In other words, appellant should be barred from using a Crim.R. 32.1 motion to question whether he was properly informed of the nonprobationary nature of the offense because he could have raised precisely the same issue in a timely direct appeal or an App.R. 5 delayed appeal following his conviction and sentencing. Appellant, however, never exercised his right to appeal.
The trial court also concluded that the doctrine of laches supported the denial of appellant's Crim.R. 32.1 motion because the state had been materially prejudiced by the six-year delay in filing the motion. The state was prejudiced in at least two ways: (1) a crucial expert prosecutorial witness could no longer be located; and (2) the police had destroyed physical evidence associated with the case during the intervening years since appellant had pled guilty and been imprisoned.
Upon review, it is apparent that we need not address the applicability of these doctrines. Even assuming arguendo thatres judicata and laches had no application to the case at bar, the trial court's reference to them in its judgment entry would not amount to reversible error.
It is well-settled that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. State ex rel. Fattlar v. Boyle
(1998), 83 Ohio St.3d 123, 125, citing State ex rel. Peeples v.Anderson (1995), 73 Ohio St.3d 559, 560; State v. Long (1998),127 Ohio App.3d 328, 334. Regardless of the applicability of resjudicata and laches, therefore, we must affirm the trial court's judgment because the court correctly found that appellant had not shown the existence of a manifest injustice as required by Crim.R. 32.1. The second and third assignments are not well-founded.
Based on the foregoing analysis, the assignments of error lack merit. Accordingly, the judgment of the trial court is affirmed.
 ______________________________________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., concurs, O'NEILL, J., dissents.
[1] Crim.R. 32.1 was amended effective July 1, 1998, such that the phrase "or imposition of sentence is suspended" was deleted, and the words "or her" were inserted after the word "his."
[2] This court has previously held that Crim.R. 11(C)(2) can essentially be divided into two parts, to wit: the constitutional guaranties of Crim.R. 11(C)(2)(c) and the other nonconstitutional requirements embodied in Crim.R. 11(C)(2)(a) and (b). State v. Mallon (Dec. 17, 1999), Trumbull App. No. 98-T-0032, unreported, at 2, 1999 WL 1297603. The waiver of the constitutional rights in Crim.R. 11(C)(2)(c) requires strict compliance on the part of the trial court. However, the trial court need not exercise such strict adherence when discussing the nonconstitutional requirements of Crim.R. 11(C)(2)(a) and (b). Rather, a guilty plea is valid if the trial court substantially complies with the language of Crim.R. 11(C)(2)(a) and (b). Id. at 3, citing State v. Nero (1990), 56 Ohio St.3d 106, 108. Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving.