DECISION AND JUDGMENT ENTRY
This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. Jeremy Lewis, defendant below and appellant herein, raises the following assignments of error for review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE DEFENDANT-APPELLANT PROVED BY ALIBI EVIDENCE THAT THE DEFENDANT-APPELLANT WAS NOT WITH THE ALLEGED VICTIM AT THE TIMES THE ALLEGED RAPES ALLEGEDLY OCCURRED."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN THAT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT PENETRATION OF THE ALLEGED VICTIM HAD OCCURRED AS REQUIRED BY O.R.C. 2907.01(A)."
On October 27, 2000, the Scioto County Grand Jury returned a three count indictment charging appellant with the rape (counts one and two involved fellatio and count three involved vaginal intercourse) of a victim younger than thirteen years of age in violation of R.C.2907.02(A)(1)(b). The indictment further alleged that appellant purposely compelled the victim to submit by force or by the threat of force.
On April 30 and May 1, 2001, the trial court conducted a bench trial. The prosecution called four witnesses in its case-in-chief and three rebuttal witnesses. Sandra Lewis, the victim's mother, testified that she works as a waitress and lives next door to her former co-worker, Kim Eggerton. Eggerton had hired Lisa Queen to care for her children, six year old Justin, seven year old Amber, and infant Joshua, during Eggerton's work hours. Sandra Lewis asked Queen if she could also care for K.L., Lewis's eight year old daughter. Queen agreed.
K.L. testified that on several occasions, appellant pulled down K.L.'s trousers and caused her to engage in fellatio. Appellant also held K.L. on his lap while rocking her atop his genitals. K.L. stated that appellant asked her if she "wanted to ride the pony."
Jeanne Syroney, a family nurse practitioner employed at Mercy Health Center in Portsmouth, examined K.L. Syroney performed a general physical examination, conducted an interview, and used a sexual assault test kit to perform a vaginal inspection and to collect specimens. Syroney testified that she discovered abnormalities in K.L.'s vaginal area, including erythema (extreme redness), swelling and dried fluid. Syroney concluded that K.L. suffered significant irritation or trauma and that some degree of penetration occurred, although she could not specify with precision the degree of penetration.
New Boston Police Department Sergeant Aaron Elliott stated that he investigated the incident and that he questioned appellant. Sgt. Elliott testified that appellant admitted, during a videotaped interview, that he engaged in sexual conduct with the victim. Appellant maintained, however, that the victim desired to engage in sexual relations and that he merely gave in to her demands. The prosecution introduced the videotaped interview into evidence.
In his defense, appellant called nine witnesses to support his alibi claim. Wayne Burton, appellant's cousin, Philip Lewis, appellant's father, Lisa Queen, appellant's sister, Julia Lewis, appellant's sister, Julia Ann Lewis, appellant's mother, Lisa Potts, appellant's cousin and appellant testified that appellant was not present in Eggerton's home during the dates and times in question. Queen, the babysitter for K.L. and Eggerton's children, stated that appellant was not present at Eggerton's home other than one occasion, and that during that one occasion appellant did not go upstairs with the children.
Appellant testified that he had no contact whatsoever with K.L. Appellant also testified that although he recalled going to the New Boston Police Department after Sandra Lewis notified the authorities, he could not recall making the videotaped statement. Appellant noted that he is diabetic, that he suffers from high blood pressure and that he did not eat on the day of the police investigation. As a consequence of these factors, appellant stated that he became very "light headed," and that this may be the reason for the inaccurate statements that he made during the interview.
On rebuttal, the prosecution called Steven and Stephanie Lewis, the victim's ten and eleven year old siblings. Each testified that appellant was at the Eggerton residence during the relevant time periods. Stephanie also stated that appellant had been upstairs in the residence playing video games "with the little kids." Kimberly Eggerton testified on rebuttal that on a couple of the days in question, she observed appellant and K.L. at her residence at the same time.
 I
In his first assignment of error, appellant asserts that the trial court's judgment is against the manifest weight of the evidence. In particular, appellant contends that the alibi evidence adduced at trial establishes that he had no contact with the victim during the time that the acts allegedly occurred. Appellee argues that the trial court heard conflicting evidence and made an appropriate decision in light of the court's duty to evaluate and to adjudge witness credibility.
When a reviewing court considers a claim that a conviction is against the weight of the evidence, we must generally defer to the trier of fact. In State v. Thomas (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356,1357, the Ohio Supreme Court wrote:
 "It is emphasized that an appellate court may not reverse the judgment of conviction unless reasonable minds could not fail to find reasonable doubt of the defendant's guilt. It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts. * * *"
In State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus, the court held:
 "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."
See, also, State v. Tyler (1990), 50 Ohio St.3d 24, 553 N.E.2d 576. The weight to be given evidence and the credibility of witnesses are matters entrusted to the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. Generally, the trier of fact is better situated than an appellate court to view witnesses and to observe their demeanor, gestures, voice inflections and to use those observations in weighing credibility. A trier of fact is free to believe all, part or none of the testimony of each witness. State v. Long (1998), 127 Ohio App.3d 328,713 N.E.2d 1.
In State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009,1010, the court discussed the manner in which courts should determine whether a criminal conviction is against the manifest weight of the evidence:
 "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
Thus, when substantial evidence exists upon which a trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the trier of fact as to the weight and the sufficiency of the evidence. State v. Nicely (1988),39 Ohio St.3d 147, 529 N.E.2d 1236; State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54. Criminal convictions should not be reversed as against the weight of the evidence unless the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Statev. Garrow (1995), 103 Ohio App.3d 368, 659 N.E.2d 814; State v. Caldwell
(1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.
In the case sub judice, after our thorough review of the evidence adduced at trial, we find that the prosecution presented substantial competent and credible evidence upon which the trier of fact could have reasonably concluded that all elements of the offenses had been proven beyond a reasonable doubt. The prosecution's witnesses, if believed, establish that appellant committed the offenses. K.L. related to the court the nature of appellant's conduct. Nurse practitioner Syroney testified about her findings of K.L.'s vaginal trauma. Other witnesses testified about appellant's presence in the Eggerton home. Finally, appellant's own videotaped statements establish that he engaged in sexual conduct with the victim. Thus, we believe that ample evidence exists to support the trial court's conclusion.
We readily acknowledge that appellant introduced extensive alibi evidence in an attempt to establish that he was not present at the residence and that he did not have the opportunity to commit the criminal acts in question. It is, however, within the trier of fact's province to determine the weight to attach to particular evidence. Obviously, the trier of fact opted to believe the prosecution's witnesses and the appellant's videotaped statements. Thus, we cannot conclude that the trial court's judgment is against the manifest weight of the evidence. Accordingly, based upon the foregoing reasons we overrule appellant's first assignment of error.
 II
In his second assignment of error, appellant asserts that regarding count two of the indictment, the trial court's finding that penetration occurred is against the manifest weight of the evidence.[1] Appellee argues that testimony of the victim, the nurse practitioner and appellant's videotaped statement all establish that some degree of penetration occurred.
At this juncture, we again note that the weight to be given evidence and the credibility of witnesses are matters entrusted to the trier of fact. DeHass, supra. Furthermore, a reviewing court should not reverse a conviction when substantial evidence exists upon which a trier of fact could reasonably conclude that all elements of an offense have been proven beyond a reasonable doubt. Eskridge, supra.
In the case sub judice appellant asserts that neither Syroney's nor K.L.'s testimony establishes that penetration did in fact occur. Appellant further argues that although he acknowledged during his videotaped statement that penetration did occur, his statement must be discounted because he may have been undergoing a diabetic reaction which affected the accuracy of his responses. Appellant also contends that other factors militate against a finding that penetration occurred, including his statement that he did not have an erection and that he lacked any sexual experience. We disagree with appellant.
During the trial, Sgt. Elliott testified that appellant admitted to him that he penetrated the victim. Elliott stated:
 "Then after I kept, basically talking to him about that then he finally begin telling me the events that took place which was, let's see, he said that he was in one of the bedrooms and that Katie wanted to touch his penis and the other two kids were under the bed and she touched his penis. She made the other two kids leave the bedroom, shut the door and then he pulled his pants down to his thighs and laid back on the bed and then she got on top of him. He said it was for about thirty seconds and there was penetration around an inch he believed and then he got off of her, or she got off of him, put her clothes on, he pulled his pants up and they went downstairs.
Q. He said that there was penetration?
A. Yes."
Further, appellant's own videotaped statement reveals the following information:
 "The time now is 12:45 a.m. Okay, Mr. Lewis, I give you the opportunity to just go ahead and start telling me what we have talked about on the events that took place last week in one of those apartments at 2759 Rhodes Avenue.
 MR. LEWIS: I don't remember what day it was, but I was coming back from school and went over where my sister was babysitting at and I was dead tired and stuff and these kids were nagging me and somehow figured, you know, about sex and stuff like that.
 Katie wanted to experiment, I guess, I don't know how you would say it. She wouldn't leave me along (sic) about it so I finally gave in and first I let her touch my penis, then I let her put her lips on it, then I let her sit on my lap."
* * *
 "OFFICER ELLIOTT: And after she put her lips on it you say she got on your lap, correct?
MR. LEWIS: Yeah.
 OFFICER ELLIOTT: There was penetration, it went in, correct?
MR. LEWIS: Yeah.
 OFFICER ELLIOTT: Okay, how far do you think there was penetration, how far do you think it went in?
 MR. LEWIS: I don't know. I really couldn't say, maybe an inch.
OFFICE ELLIOTT: Maybe an inch?
MR. LEWIS: Yes.
OFFICER ELLIOTT: You're just guessing?
MR. LEWIS: Yes, I am not for sure.
OFFICER ELLIOTT: Okay, how long did this last?
MR. LEWIS: Not very long, she's like (inaudible)
 OFFICER ELLIOTT: What do you say about how long, seconds, minutes?
MR. LEWIS: Maybe like thirty seconds.
OFFICER ELLIOTT: Around thirty seconds?
MR. LEWIS: Yeah.
 OFFICER ELLIOTT: Okay, she sat on it around thirty seconds?
MR. LEWIS: (shakes head yes)"
After our review of the evidence, we believe that substantial competent and credible evidence exists upon which the trier of fact could conclude that the penetration element has been established. Nurse practitioner Syroney testified that some degree of penetration occurred, although she could not specify the degree of penetration. K.L. testified that when appellant placed her on his lap, he put her "private" on top of his "hard private" and that it caused her pain. Appellant stated during his videotaped statement that he penetrated K.L. "maybe an inch." The prosecution's witnesses and appellant's own admission, if believed, provide an ample basis for the trial court's finding.
Accordingly, based upon the foregoing reasons we overrule appellant's second assignment of error and affirm the trial court's judgment.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Evans, J.: Concur in Judgment Opinion
[1] R.C. 2907.02 provides in pertinent part:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 (B) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
R.C. 2907.(A) provides:
 "Sexual conduct" means vaginal intercourse between a male and female; and intercourse, fellatio, and cunnilingus between persons regardless of sex; and the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.