This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Mr. Ladon Putnam, appellant, appeals from the judgment of the Summit County Court of Common Pleas. We affirm.
 I.
On January 2, 2001, police responded to a phone call informing them that a shooting had occurred at 1023 Laurel Avenue, Summit County. When the police arrived, the victim of the shooting, Cravanas Moore, had been taken to the hospital. Officer Donald Frost of the Akron Police Department stated in the May 22, 2001 hearing that, when he went to the house, he was informed that the shooter had also left. He stated that several people still remained in the house so he proceeded to contain the witnesses and conduct interviews. Based upon these conversations, Officer Frost stated that Mr. Putnam emerged as the suspect for the shooting incident.
On February 23, 2001, Mr. Putnam was indicted on one count of attempted murder, pursuant to R.C. 2903.02(A) and 2923.02, and one count of felonious assault, pursuant to R.C. 2903.11(A)(2). Both counts included firearm specifications pursuant to R.C. 2941.145. On April 10, 2001, Mr. Putnam filed a motion to suppress his in-court identification. The motion to suppress was denied on April 23, 2001.
A jury trial was held on May 21 and May 22, 2001. On May 24, 2001, the jury returned a verdict of guilty on the charges of attempted murder and felonious assault. Mr. Putnam was also found guilty of the gun specifications. He was sentenced accordingly. This appeal followed.
 II.
Mr. Putnam asserts three assignments of error. We will discuss each in turn.
 A. First Assignment of Error THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT'S MOTION TO SUPRESS [sic.] THE IMPROPER IDENTIFICATION OF DEFENDANT.
In his first assignment of error, Mr. Putnam asserts that the trial court erred in denying his motion to suppress the identification of himself as the suspect. Specifically, he asserts that the method of identification, which consisted of giving Mr. Moore one photograph after the police had already told Mr. Moore and his girlfriend, Regina Bronner, that they knew who fired the shot, was highly suggestive. We disagree.
Initially, we note that an appellate court's review of a ruling on a motion to suppress evidence presents a mixed question of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. When considering a motion to suppress, a trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Smith (1997), 80 Ohio St.3d 89, 105. Thus, "a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."Ornelas v. United States (1996), 517 U.S. 690, 699, 134 L.Ed.2d 911,920. Accordingly, we will accept the factual determinations of the trial court so long as they are supported by competent and credible evidence; however, without deference to the trial court's conclusion, we will determine "whether, as a matter of law, the facts meet the appropriate legal standard." State v. Curry (1994), 95 Ohio App.3d 93, 96.
A photographic identification procedure is violative of due process of law only if it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v.United States (1968), 390 U.S. 377, 384, 19 L.Ed.2d 1247, 1253. In making a determination as to whether a photographic identification procedure was impermissibly suggestive, "[t]he court looks to several factors, including the size of the array, its manner of presentation, and its contents." State v. Brown (Aug. 19, 1998), Summit App. No. 18591, unreported, at 7. Furthermore, an identification made subsequent to an impermissibly suggestive procedure is still admissible where the identification itself is nevertheless deemed reliable. State v. Garner
(1995), 74 Ohio St.3d 49, 61. "The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive." State v. Parker (1990),53 Ohio St.3d 82, 87, citing Neil v. Biggers (1972), 409 U.S. 188, 199,34 L.Ed.2d 401, 411.
Without addressing whether the photographic identification itself was impermissibly suggestive, the evidence before this court supports the conclusion that the identification of Mr. Putnam as the shooter was reliable and, therefore, admissible. At the April 20, 2001 motion to suppress hearing, Mr. Moore testified that, on January 2, 2001, he and Ms. Bronner drove to 1023 Laurel Avenue to find a friend. He stated that several people were at the house, including Mr. Putnam. Mr. Moore recalled that he had known Mr. Putnam approximately two and one-half months prior to the shooting incident. Mr. Moore stated that he held a conversation with Mr. Putnam whereupon Mr. Putnam became angry, pulled out a gun, and told Mr. Moore that he was going to kill him. Mr. Moore testified that he was able to push Mr. Putnam away and had began to run up the stairs when Mr. Putnam aimed and fired the gun, hitting him in the buttocks. Mr. Moore explained that he was able to jump out of a window onto the roof. He stated that Mr. Putnam followed him outside and shot at him while he was on the roof before fleeing from the house in a car.
Ms. Bronner testified that she lived in the same neighborhood as Mr. Putnam and had known him for approximately six months prior to this incident. Ms. Bronner stated that she was waiting in the car for Mr. Moore when she heard a gunshot fired inside the house. She testified that she next saw three people run out of the house. One of these people was Mr. Putnam. She stated that she saw something in his hand. Ms. Bronner said that more gunshots were fired and then she saw Mr. Putnam drive away. She testified that she subsequently contacted her parents and that her mother accompanied Mr. Moore and herself to the hospital.
Mr. Moore testified that he would not identify his assailant at first because he wanted to seek revenge himself and did not want the police involved. He explained that he changed his mind when the police informed him that several other witnesses had already provided information to the police. Mr. Moore stated that he told the police that Mr. Putnam shot him, referring to him by his street name "Lay Low." Mr. Moore also stated that, after he implicated Mr. Putnam, the police brought back several single photographs of people who had been at the house and he pointed out the person who was Lay Low. At the hearing, Ms. Bronner also stated that she had identified Mr. Putnam as the shooter prior to being shown any photographs. At the close of the hearing, the trial court summarized the testimony of Mr. Moore and Ms. Bronner, stating that it appeared "that the photograph did not really play a significant role in that identification at all[.] * * * [T]heir testimony seems to be that they identified him prior to seeing the photograph."
Under the totality of the circumstances, the identification of Mr. Putnam as the shooter was reliable. Both Mr. Moore and Ms. Bronner knew Mr. Putnam prior to the shooting and recognized him as the assailant throughout the incident. Moreover, both Mr. Moore and Ms. Bronner informed the police that the shooter was Mr. Putnam prior to being shown any photographs. Based on the evidence presented and the reliability of the identification, we cannot say the trial court erred in its denial of the motion to suppress the identification. Accordingly, Mr. Putnam's first assignment of error is overruled.
 B. Second Assignment of Error THE VERDICTS RETURNED BY THE JURY OF GUILTY FOR ATTEMPTED MURDER, FELONIOUS ASSAULT, AND GUN SPECIFICATIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 Third Assignment of Error THE VERDICTS RETURNED BY THE JURY OF GUILTY FOR ATTEMPTED MURDER, FELONIOUS ASSAULT, AND GUN SPECIFICATIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
First, we will consider Mr. Putnam's assertion that his convictions for attempted murder and felonious assault, along with the gun specifications, were against the manifest weight of the evidence. Next, we will address the assertion that the evidence was insufficient to sustain his conviction. Both assignments of error lack merit.
 Manifest Weight
When determining whether a conviction was against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Mr. Putnam argues that there is no credible evidence that he was the person who shot Mr. Moore. Additionally, Mr. Putnam argues that Mr. Moore and Ms. Bronner gave such conflicting testimony that no trier of fact could find that Mr. Putnam shot Mr. Moore.
In the present case, Mr. Moore testified that Mr. Putnam became angry during a conversation that they were having and, as a result, pulled out a gun and placed it to Mr. Moore's head. Mr. Moore stated that Mr. Putnam made Mr. Moore get down on his knees and told him "I'm gonna to kill you." Mr. Moore stated that Mr. Putnam directed two of his friends to go through Mr. Moore's pockets to find and take any valuables he possessed. He stated that no one else in the room besides Mr. Putnam possessed a gun. At that point in time, Mr. Moore explained, Daniel Maxwell intervened and told Mr. Putnam not to shoot the gun because Mr. Maxwell's son was sleeping upstairs. Mr. Moore stated that Mr. Putnam became angry with Mr. Maxwell. When Mr. Putnam's attention was no longer focused on him, Mr. Moore pushed Mr. Putnam away and ran toward the upstairs portion of the house. Mr. Moore testified that, as he ran, Mr. Putnam shot at him, hitting him in the buttocks. He stated that he first went into the bathroom where he saw there was no place to escape and that he next ran into a bedroom where he jumped out a window onto the roof. Mr. Moore said that Mr. Putnam went outside and shot at him again while he was on the roof before getting in a car to drive away. He admitted that, at first, he was reluctant to tell the police who shot him because he wanted to seek revenge against Mr. Putnam himself. However, he stated that, once the police told him that other witnesses had already provided information about the incident, he admitted to the police that Mr. Putnam was the shooter.
Mr. Maxwell testified that he was at 1023 Laurel Avenue on January 2, 2001. He stated that he knows Mr. Putnam from school and that he was in the house with him on that day. He also stated that he saw Mr. Putnam point a gun at Mr. Moore while someone else went through Mr. Moore's pockets. Mr. Maxwell testified that Mr. Putnam became angry with him when he told Mr. Putnam not to do anything because his son was upstairs. He stated that he headed toward the stairs to go check on his son, heard a gunshot, and saw Mr. Moore run past him. He said that Mr. Moore first ran into the bathroom and then into a bedroom where he jumped out of the window. Mr. Maxwell testified that he later heard another gunshot.
Raymond James testified that he was in the house at 1023 Laurel Avenue with Mr. Putnam on January 2, 2001. He stated that he saw Mr. Putnam pointing a gun at Mr. Moore's head while Mr. Moore was down on his knees. He also stated that Mr. Moore broke away from Mr. Putnam and began to run, whereupon Mr. James heard a gunshot.
Ms. Bronner testified that she was waiting in the car for Mr. Moore when she heard a gunshot. Ms. Bronner also testified that she saw three people run out of the house. One of these people was Mr. Putnam. At the suppression hearing, she stated that she saw something unidentifiable in his hand that may have been a gun. At trial, Ms. Bronner initially stated that what she saw was definitely a gun but later clarified her comment by explaining that she was only certain the object had been a gun because Mr. Putnam later shot toward the roof at Mr. Moore. Also, at the suppression hearing, Ms. Bronner stated that she did not see anyone fire shots at Mr. Moore because she was crouched over to protect herself. When she later testified at trial, she clarified that she had been crouched over during the first shot at the roof but was able to look up to see Mr. Putnam fire a second shot at the roof. Ms. Bronner testified that she saw Mr. Putnam drive away and that she then went to get help from her parents. She also testified that she was hesitant, at first, to tell the police that Mr. Putnam fired the shots but that later she changed her mind and identified him as the assailant.
First, in order to find Mr. Putnam guilty on the charge of attempted murder, pursuant to R.C. 2903.02(A) and 2923.02, the prosecution was required to prove beyond a reasonable doubt that Mr. Putnam: (1) purposely, (2) engaged in conduct that, if successful, would have resulted in or caused the death of another. Purposely is defined in R.C. 2901.22(A) and provides that one acts purposely when it is that person's "specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
The evidence in this case overwhelmingly indicates that Mr. Putnam purposely and with the specific intent to threaten Mr. Moore's life, pulled out his gun, pointed it at Mr. Moore, and shot at him, hitting him in the buttocks. Evidence also indicates that, once Mr. Moore escaped onto the roof, Mr. Putnam followed him, continuing to fire the gun in Mr. Moore's direction before driving off in a car. Testifying, Mr. Moore stated that he feared for his life when Mr. Putnam told him "I'm going to kill you." Mr. Putnam's actions denote a specific intent to threaten or terminate Mr. Moore's life, and, had Mr. Putnam aimed the gun differently, Mr. Moore could have certainly been killed.
Second, to find Mr. Putnam guilty on the charge of felonious assault, pursuant to R.C. 2903.11(A)(2), the prosecution needed to prove beyond a reasonable doubt that Mr. Putnam: (1) knowingly, (2) caused or attempted to cause physical harm to another, (3) by means of a deadly weapon. R.C.2901.22(B) defines the culpable mental state of knowingly and states, in pertinent part, that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
The evidence reveals that it was Mr. Putnam, and not anybody else in the room, who possessed the gun. The evidence adduced also demonstrates that Mr. Putnam was aware of the fact that, by pointing this gun at Mr. Moore's head and later shooting the gun at Mr. Moore, he would probably cause physical injury to Mr. Moore. Mr. Moore testified that Mr. Putnam told him that it was his intent to kill Mr. Moore. After Mr. Moore was injured the first time but managed to escape, Mr. Putnam followed him outside and continued to shoot at him. At such point, not only was Mr. Putnam aware that he had caused physical injury to Mr. Moore but also was attempting to cause further injury.
Third, in order to add the firearm specifications pursuant to R.C.2941.145, the prosecution was required to prove beyond a reasonable doubt that Mr. Putnam had a firearm on or about his person or under his control while committing the offense. It also must be proven, beyond a reasonable doubt, that Mr. Putnam used the firearm to facilitate the offense, or displayed the firearm, brandished the firearm, or indicated possession of the firearm.
Upon considering the evidence presented, it is clear that Mr. Putnam possessed a firearm and used such firearm to facilitate both the offense of attempted murder and the offense of felonious assault. Testimony was given that, when Mr. Putnam became angry at Mr. Moore during a conversation, Mr. Putnam pulled out a gun and aimed it at Mr. Moore. Additionally, each person who was present at the scene corroborated that they heard the gun being fired before Mr. Putnam fled the house and took off in a car.
After a careful review of the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Mr. Putnam of attempted murder and felonious assault, each with a gun specification. Accordingly, we hold that Mr. Putnam's convictions were not against the manifest weight of the evidence. Mr. Putnam's third assignment of error is overruled.
 Sufficiency
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." (Emphasis omitted.) Statev. Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462, unreported, at 4. Having already found that Mr. Putnam's convictions were supported by the manifest weight of the evidence, we find that there was sufficient evidence that Mr. Putnam did commit the crimes of attempted murder and felonious assault, each with a gun specification. Mr. Putnam's second assignment of error is overruled.
 III.
Mr. Putnam's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
SLABY, P.J., CARR, J. CONCUR.