The STATE of Ohio, Appellee,

v.

ZAMPINI, Appellant.

[Cite as *State v. Zampini* (1992), 79 Ohio App.3d 608.]

Court of Appeals of Ohio,
Lake County.

No. 91–L–080.

Decided May 18, 1992.

*James K. Farrell, Jr.,* for appellant.

*Joseph Gurley,* for appellee.

---

NADER, Judge.

This is an accelerated appeal from the Painesville Municipal Court. Defendant-appellant, Darrin L. Zampini, appeals his conviction for driving under the influence of alcohol, R.C. 4511.19, and driving under a suspended license, R.C. 4507.02. Appellant argues the trial court erred by failing to suppress all the evidence seized after appellant's arrest; he claims the initial stop of appellant was illegal. Appellee did not file a brief with this court.

The testimony at the suppression hearing established that the Painesville police dispatcher, at about 3:00 a.m. on January 21, 1991, received an anonymous phone call reporting a dark truck on Belmont Avenue, and a white male driving the truck. The man was allegedly knocking on the doors of houses on Belmont Avenue. In response, the dispatcher notified an officer of the phone call. This officer, in turn, informed a second officer of the call. Both officers

then proceeded to Belmont Avenue in separate cars; both were aware of recent thefts and break-ins on Belmont Avenue.

Upon arriving at Belmont Avenue, one of the officers noted that a single set of tire tracks led through five inches of fresh snow to a dark-colored truck. The truck made a U-turn on Belmont Avenue (which was not alleged to be illegal), and proceeded past the police officers. Upon seeing a white male in the dark-colored truck, one of the officers stopped appellant.

Appellant, upon being stopped, was questioned about his identity and reason for being in the area. Appellant told the officer he was in the area because his girlfriend's mother lives on Belmont Avenue. Subsequently, appellant was arrested for driving under the influence of alcohol and driving under a suspended license.

In his motion to suppress, appellant challenged the legality only of the initial stop; thus, what occurred after the stop is not relevant to determining the validity of the stop.

Although the trial court found the officers had "probable cause" to stop appellant, probable cause is not necessary for an investigative stop. *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906. In order to justify an investigative stop, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences, from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906, 44 O.O.2d 383, 393. The propriety of an investigative stop must be viewed in light of the totality of the circumstances. *United States v. Cortez* (1981), 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that the person stopped was violating or about to violate the law. *Terry, supra; Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357; *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.

In the instant case, the police officers were responding to a call which described a dark-colored truck which was being driven by a white male. The call, combined with the fact that there was only one set of tire tracks leading through the snow, would reasonably induce the inference that appellant was the subject of the phone call to the police dispatcher.[1]

---

**1.** We note, in passing, that appellant's actual reason for being in the area is irrelevant. The focus of our inquiry is the information which the police had which would warrant an investigative stop.

The facts that the white male was allegedly knocking on doors of Belmont Avenue houses at 3:00 a.m., and that the officers were aware of recent break-ins and thefts in the area, reasonably could lead to the inference that unlawful conduct was about to occur.

Based upon the totality of the circumstances, we believe there were sufficient articulable facts to believe appellant was about to violate the law. Accordingly, appellant's assignment of error is without merit, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., concurs.

JOSEPH E. MAHONEY, J., dissents.

JOSEPH E. MAHONEY, Judge, dissenting.

I respectfully dissent from the majority's opinion.

I agree with the majority that appellant challenged the legality only of the initial stop; thus, what occurred after the stop and led to appellant's arrest is not relevant to determining the validity of the investigative stop. However, the trial court overruled appellant's motion to suppress, stating that:

"Based on the totality of the circumstances surrounding this stop, the Court finds that the Officer had *probable cause* to stop the Defendant." (Emphasis added.)

It is evident that the trial court applied the incorrect standard in deciding the motion to suppress. Probable cause is not necessary for an investigative stop. *State v. Brandenburg* (1987), 41 Ohio App.3d 109, 534 N.E.2d 906. However, an inarticulate hunch or suspicion is not enough to justify an investigative stop. Based on the totality of the circumstances, the officer must have a reasonable belief and specific facts upon which a reasonable suspicion could be based that appellant was violating or about to violate the law. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 905–906, 44 O.O.2d 383, 393; *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357; *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660.

Detaining and stopping an individual merely because he "looked suspicious" and demanding identification were held to be an illegal seizure in violation of the Fourth Amendment. *Brown, supra.* Thus, looking suspicious is not enough to justify an investigative stop. Furthermore, the officer's knowledge of prior crimes in the area which did not occur on the date of the stop or soon before such date is not an adequate basis for the stop. *State v. Jackson* (Mar. 7, 1986), Marion App. No. 9–84–50, unreported, 1986 WL 2979; *State v.*

*Bowling* (Feb. 17, 1987), Warren App. No. CA86–06–038, unreported, 1987 WL 6706.

In *Jackson, supra,* the officer stopped a vehicle based on his observations that the vehicle had out-of-state license plates, that the driver changed his mind about turning into the entrance of an automobile repair shop at 3:25 a.m. and then proceeded into a residential neighborhood, and that the driver drove down two streets, turned around and proceeded to exit via the same route he entered. The officer was aware that burglaries had occurred in the neighborhood at that time of night in the past. Based on these facts, the court held that the basis for the stop was nothing more than an "inarticulate hunch" that the driver was engaged in suspicious conduct. The court stated:

" * * * The stop in this case appears to have been made in good faith. However, good faith, accompanied only by an inarticulate hunch is insufficient to justify even the temporary seizure involved in a stop. * * * " *Id.* at 3.

The court reasoned that:

"Perfectly legitimate reasons exist to explain the appellee's conduct. For example, the appellee could have been looking for an address in an unfamiliar neighborhood. At best, the appellee's actions may have been sufficient to justify continued surveillance of him. Considering the totality of the circumstances, the deputy was not justified in stopping the appellee for investigative questioning." *Id.*

The facts in the case *sub judice* are weaker than the facts in *Jackson, supra.* In *Jackson,* the officer actually observed the alleged suspicious conduct of the defendant. In the case before this court, the officers only had the dispatch information, which was based on an anonymous call, of a suspicious dark truck and a white male knocking on doors. There were no facts presented to support a reasonable belief that appellant had done anything wrong or was about to break the law. Knocking on someone's door, even at three o'clock in the morning, is not an illegal or unlawful act. As stated in *Jackson,* there was a perfectly legitimate reason to explain appellant's conduct or presence in the street. Appellant could have been looking for an address or, as he stated, looking for the house of his girlfriend's mother who lived on the street. Thus, the stop was based on nothing more than an inarticulate hunch that appellant was going to commit a crime and, therefore, was improper.

Accordingly, the motion to suppress should have been granted.