The STATE of Ohio, Appellant,

v.

LONG, Appellee.

[Cite as *State v. Long* (1998), 127 Ohio App.3d 328.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 96CA2196.

Decided April 22, 1998.

*Michael Ater*, Ross County Assistant Prosecuting Attorney, for appellant.

*James T. Boulger*, for appellee.

---

STEPHENSON, Presiding Judge.

This is an appeal by the state of Ohio pursuant to Crim.R. 12(J) and R.C. 2945.67 from a judgment entered by the Common Pleas Court of Ross County, Ohio, ordering the suppression of evidence that was to be used against Rick A. Long, defendant below and appellee herein. The following errors are assigned for our review:

"I. The trial court erred in finding that defendant was effectively arrested when Trooper Coffman seized the keys to the truck.

"II. The trial court erred in finding that there was not probable cause to arrest defendant for driving under the influence."

The record reveals the following facts pertinent to this appeal. On the morning of July 7, 1995, Rebecca Kauffman of the Ohio State Highway Patrol was alerted by a passing motorist that there was a car pulled off and parked on the side of Crouse Chapel Road with a driver slumped over. Trooper Kauffman went to investigate. She parked her cruiser behind the vehicle, got out, and went to the passenger-side window to ascertain whether there were any weapons on the front seat. Satisfied that nothing was there which could be used to harm her, she went around to the driver's side of the car and tried to rouse the occupant by knocking on the window. There was no response, and Trooper Kauffman eventually opened the door, grabbed the occupant, and began shaking him. The occupant woke up but was very disoriented. He identified himself as Rick A. Long (appellant herein) and stepped out of the vehicle. Trooper Kauffman then noticed the car keys on the front seat where appellant had been sitting and grabbed them. She also detected "a strong odor of alcohol about him" and proceeded to conduct a horizontal gaze nystagmus test. Appellant performed poorly, and Trooper Kauffman radioed her supervisor (Sgt. Fisher) and requested that he come to the scene. In the meantime, she was going to conduct some field sobriety tests. The officer and appellant walked toward the rear of the vehicle and she asked whether he had "anything on" him. Appellant then reached into his pocket, pulled out a "Centrum" bottle, handed it to Trooper Kauffman, and volunteered that he had some "amphetamines." Sgt. Fisher arrived on the scene, and appellant was informed that he was under arrest.

On or about August 25, 1995, the Ross County Grand Jury handed down an indictment charging appellant with drug abuse in violation of R.C. 2925.11. He filed a motion to suppress the evidence against him, arguing that it had been

obtained in violation of his state and federal constitutional rights. Specifically, appellant claimed that Trooper Kauffman lacked reasonable suspicion to detain him and, later, lacked probable cause to make an arrest. A hearing was held on November 20, 1995, at which time both Trooper Kauffman and appellant gave testimony regarding their recollections of the events of that morning. The lower court issued a decision on March 15, 1996, sustaining the motion. It was determined that appellant was "effectively arrested" when Trooper Kauffman took possession of his car keys. The court found that the facts and circumstances at that time were not sufficient to give the officer "probable cause" to make such an arrest. Observations made by Trooper Kauffman were also called into question, as it was noted that "there were indications that [appellant] was *not* drunk." (Emphasis added.) In sum, the trial court ruled that the arrest was improper and that the evidence seized as a result thereof should be suppressed. This appeal followed.

It should be noted at the outset that appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. See *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119; *United States v. Mejia* (C.A.9, 1991), 953 F.2d 461, 464–465; *United States v. Wilson* (C.A.11, 1990), 894 F.2d 1245, 1254. A trial court assumes the role of trier of fact during proceedings on a motion to suppress. *State v. Payne* (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61–62; *State v. Robinson* (1994), 98 Ohio App.3d 560, 570, 649 N.E.2d 18, 25; *State v. Rossiter* (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645, 648. The evaluations of evidence and credibility of witnesses during such proceedings are issues to be determined by the trial court. *State v. Smith* (1997), 80 Ohio St.3d 89, 105, 684 N.E.2d 668, 685; *State v. Brooks* (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030, 1036–1037; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. A court's factual findings are to be accepted unless they are "clearly erroneous." *State v. Babcock* (Feb. 13, 1997), Washington App. No. 95CA40, unreported, 1997 WL 79878; see, also, *United States v. Lewis* (C.A.1, 1994), 40 F.3d 1325, 1332. That is to say that a reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as they are supported by competent and credible evidence. *State v. Harris* (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908; see, also, *State v. DePalma* (Jan. 18, 1991), Ross App. No. 1633, unreported, 1991 WL 13824. The application of the law to those facts, however, is then subject to a *de novo* standard of review. *Harris, supra*, 98 Ohio App.3d at 546, 649 N.E.2d at 9; *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036; see, also *Lewis, supra*, 40 F.3d at 1332; *Wilson, supra*, 894 F.2d at 1254. With these principles in mind, we turn our attention to the issues raised by the parties in their briefs.

The state's two assignments of error are interrelated and will be considered together. First, it is argued that the trial court incorrectly determined the moment of arrest to have occurred when Trooper Kauffman took appellant's keys from the front seat of the car. We agree. Constitutional jurisprudence provides for three types of contact between citizens and police: a consensual encounter, a brief detention under the auspices of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and a full-fledged arrest. *State v. Schott* (May 16, 1997), Darke App. No. 1415, unreported, 1997 WL 254141; *State v. Osborne* (Dec. 13, 1995), Montgomery App. No. 15151, unreported, 1995 WL 737913. The word "arrest" is a term of art and signifies the apprehension or detention of the person of another in order that he may be forthcoming to answer an alleged crime. *State v. Jaeger* (July 9, 1993), Washington App. No. 92CA30, unreported, 1993 WL 248605; see, also, 26 Ohio Jurisprudence 3d (1981) 146, Criminal Law, Section 453. An arrest is deemed to have occurred if there is (1) an intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. See *State v. Claytor* (1991), 61 Ohio St.3d 234, 239, 574 N.E.2d 472, 477; *State v. Darrah* (1980), 64 Ohio St.2d 22, 26, 18 O.O.3d 193, 195, 412 N.E.2d 1328, 1330–1331; *State v. Barker* (1978), 53 Ohio St.2d 135, 139, 7 O.O.3d 213, 215–216, 372 N.E.2d 1324, 1328–1329. We need not analyze all of these requirements in relation to the cause *sub judice* because, as discussed below, there was clearly a failure to establish the first one.

There was no evidence adduced at the suppression hearing below to show that Trooper Kauffman intended to arrest appellant when she removed the keys from the car seat. To the contrary, she expressly testified that "he was not under arrest at that time." It may be true that such action prevented appellant from leaving the scene. However, the officer explained that her sole reason for taking his keys was to detain him and "check him out." There is nothing in the record that contradicts that testimony or otherwise establishes an intent to make an arrest. We therefore conclude that this action was not an arrest but, rather, a brief investigatory detention under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The record reveals that appellant was not actually arrested until later when Sgt. Fisher arrived on the scene. That being the case, we need not concern ourselves with the question of whether there was "probable cause" to take the keys and detain appellant. It is well-settled law that police are not required to show "probable cause" for these sorts of detentions. See *State v. Zampini* (1992), 79 Ohio App.3d 608, 610, 607 N.E.2d 933, 934–935; *State v. Poynter* (1992), 78 Ohio App.3d 483, 485, 605 N.E.2d 429, 430; see, also *United States v. Hines* (C.A.4, 1991), 943 F.2d 348, 352; *United States v. Tapia* (C.A.11, 1990), 912 F.2d 1367, 1370. The issue is thus rendered moot.

 That does not end our inquiry, however, as a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. *In re Contested Election of November 2, 1993* (1995), 72 Ohio St.3d 411, 414, 650 N.E.2d 859, 862; *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309–310; *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745. We must therefore endeavor to ascertain whether the investigatory detention of appellant by Trooper Kauffman was constitutionally permissible. The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, prohibit the investigatory detention of a motor vehicle unless it is supported by a "reasonable suspicion" of criminal activity. See, generally, *Terry, supra,* 392 U.S. at 19, 88 S.Ct. at 1878–1879, 20 L.Ed.2d at 904–905; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273, and fn. 1. In order to effectuate a constitutionally permissible *Terry*-type detention, the law enforcement official is required to demonstrate a "reasonable suspicion" of criminal activity and must show that she was in possession of specific and articulable facts which, together with rational inferences therefrom, justify the intrusion. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490–491; and *United States v. Quarles* (C.A.8, 1992), 955 F.2d 498, 501; *United States v. Briggman* (C.A.11, 1991), 931 F.2d 705, 709; *United States v. Villegas* (C.A.2, 1991), 928 F.2d 512, 516. Such detention must be viewed in light of the totality of the surrounding circumstances presented to the police officer. *State v. Loza* (1994), 71 Ohio St.3d 61, 71, 641 N.E.2d 1082, 1097–1098; *State v. Comen* (1990), 50 Ohio St.3d 206, 210, 553 N.E.2d 640, 644–645; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044, at paragraph one of the syllabus; see, also, *United States v. Sokolow* (1989), 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–1586, 104 L.Ed.2d 1, 10–11. This is where the state's case runs into problems.

 Trooper Kauffman was justified in her initial approach to the vehicle. The record shows that she responded to the scene after another motorist had informed her that a car was parked along the side of the road with a driver slumped over. There is nothing in either the state or federal Constitution that prohibits law enforcement from approaching, and engaging in conversation with, a motorist who they believe may be in need of assistance. However, once appellant left the confines of the vehicle, Trooper Kauffman grabbed the car keys from the seat where he had been sitting. She then admittedly detained him at the scene so that she could "check him out." Such action invoked appellant's constitutional rights to be free from unreasonable seizures, and the burden was on Trooper Kauffman to justify the detention by pointing to specific and articulable facts supporting a "reasonable suspicion" of criminal activity. For the following reasons, we hold that she did not carry that burden below.

The officer explained at the suppression hearing that she detained appellant in order to investigate whether he was driving under the influence of alcohol. Trooper Kauffman testified that appellant had a strong odor of alcohol about him and seemed disoriented after he was awaken. Although the trial court did not expressly discount such testimony, it appears to have afforded the evidence little weight. The court noted in its order of suppression that "there were indications that [appellant] was *not* drunk." (Emphasis added.) Several factors were then cited by the court in support of that conclusion. We reiterate that the evaluations of evidence and the credibility of witnesses during such proceedings are issues to be determined by the trial court. *Smith, supra,* 80 Ohio St.3d at 105, 684 N.E.2d at 685; *Brooks, supra,* 75 Ohio St.3d at 154, 661 N.E.2d at 1036–1037; *Fanning, supra,* 1 Ohio St.3d at 20, 1 OBR at 57–58, 437 N.E.2d at 584–585. The trier of fact is typically free to believe all, part, or none of the testimony of each witness who appears before it. See *State v. Nichols* (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80, 88; *State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096, 1104; *State v. Harriston* (1989), 63 Ohio App.3d 58, 63, 577 N.E.2d 1144, 1147–1148. This court was not in a position to view the witnesses who testified below and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. See *Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742, 745–746; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. Thus, we are not inclined to find error when little or no weight is afforded to the testimony of a particular witness. It would seem that this was the case below. The trial court apparently was not convinced that appellant appeared "drunk" and thus afforded little weight to the justification given by Trooper Kauffman for the detention.

Even if the testimony of Trooper Kauffman had been afforded more weight, there is still a problem with whether the facts and circumstances in this case gave rise to a reasonable suspicion of criminal activity. Ohio law provides *inter alia* that "[n]o person shall operate any vehicle" under the influence of alcohol or when the level of intoxicants in blood, breath, or urine is above a certain level. R.C. 4511.19(A)(1) through (4). The keyword in this statute is the term "operate." There is no question here that appellant was not driving the vehicle when Trooper Kauffman arrived. However, "operation" of a motor vehicle for purposes of this statute encompasses more than merely driving. *State v. Cleary* (1986), 22 Ohio St.3d 198, 22 OBR 351, 490 N.E.2d 574, at paragraph one of the syllabus. The Ohio Supreme Court has consistently held that an intoxicated individual in the front seat of the vehicle, with key in the ignition, can be convicted of violating the statute. *Id.;* see, also, *State v. McGlone* (1991), 59 Ohio St.3d 122, 570 N.E.2d 1115, at the syllabus. This is true regardless of whether the engine is even running. See *State v. Gill* (1994), 70 Ohio St.3d 150,

637 N.E.2d 897, at the syllabus. These cases are distinguishable from the cause *sub judice*, however, because the keys were never in the ignition here. It was uncontroverted below that the keys were on the seat and that appellant was sitting on top of them at the time Trooper Kauffman arrived. The state nevertheless directs our attention to the following explanation given by the Supreme Court in *Cleary, supra,* at 199, 22 OBR at 351–352, 490 N.E.2d at 575:

"Operation of a motor vehicle within the contemplation of the statute is a broader term than mere driving and a person in the driver's position in the front seat with the ignition key *in his possession* indicating either his actual or potential movement of the vehicle while under the influence of alcohol or any drug of abuse can be found in violation of R.C. 4511.19(A)." (Emphasis added.)

The state contends that the car keys were in appellant's "possession" because he was sitting on them and that this would have given Trooper Kauffman "reasonable suspicion" to detain him for driving under the influence of alcohol. We are not persuaded. This court held in *State v. Kincaid* (1992), 83 Ohio App.3d 341, 344–345, 614 N.E.2d 1112, 1113–1115, that "where a person is asleep in a parked vehicle, having the key in the ignition is *a bright line test* for determining [whether] that person is guilty of violating R.C. 4511.19(A)." (Emphasis added.) This position has either expressly or implicitly been adopted by other jurisdictions as well. See, *e.g., State v. Miller* (Feb. 6, 1998), Lucas App. No. L–97–1250, unreported, 1998 WL 65498; *Rocky River v. Oakley* (Jan. 22, 1998), Cuyahoga App. No. 72065, unreported, 1998 WL 23834; *State v. Imler* (Dec. 31, 1997), Montgomery App. No. 16356, unreported, 1997 WL 797772; *State v. Shrader* (1997), 118 Ohio App.3d 221, 692 N.E.2d 628. To be sure, there is case law to the contrary. See, *e.g., State v. Vanderkooi* (1992), 82 Ohio App.3d 173, 611 N.E.2d 507, wherein the Crawford County Court of Appeals affirmed a conviction under R.C. 4511.19(A) even though the car was turned off, and the keys were not in the ignition and were, in fact, lying on the back seat. However, as noted by at least one eminent treatise on the subject, some "courts have gone to ridiculous extremes in finding operation" for purposes of the DUI statute. (Emphasis added.) See Painter & Looker, Ohio Driving Under the Influence Law (1997) 21, Section T1.9 (specifically citing the *Vanderkooi* case). One member of this court expressed the following views in the aforementioned *Kincaid* decision:

"The *McGlone* syllabus expanded the definition of 'operation' of a vehicle to include situations where a person is situated in a vehicle's driver seat and the person has placed the ignition key in the ignition. Without guidance from the Ohio Supreme Court, I do not believe it is appropriate to expand the definition of 'operation' to include situations where the ignition key is *not* in the ignition." *Kincaid, supra,* at 347, 614 N.E.2d at 1116 (Peter B. Abele, J., concurring).

The Ohio Supreme Court has provided no further guidance on this specific issue since our decision in *Kincaid*, and we decline to expand the definition of "operate" any further in this case. The engine was turned off when Trooper Kauffman arrived on the scene. There was no evidence to show that appellant had recently been operating the car or that he was prepared to operate the vehicle in the immediate future. It was uncontroverted below that the car keys were not in the ignition. Indeed, they were not even on his person. Appellant was sitting on the keys while he slept in the driver's seat of the automobile. This vehicle did not even belong to him, and there is nothing in the record to show that he knew the keys were there or that he was about to operate the car. In short, we find nothing in this case to establish that appellant was operating a motor vehicle in contravention of R.C. 4511.19(A).

It would be unrealistic of course to have expected Trooper Kauffman to analyze the subtle legal nuances of the term "operate" for purposes of applying the DUI statute. This problem has plagued appellate courts for a number of years now and (as noted above) has precipitated case law with widely divergent results. We can hardly expect law enforcement officers to apply this statute properly when experienced lawyers and judges have differing views. However, under the particular facts and circumstances of this case, we do not believe that Trooper Kauffman could have had a "reasonable suspicion" that this law had been violated. She did not observe any erratic driving on the part of appellant. Indeed, she did not see him drive at all. Trooper Kauffman testified that the vehicle was lawfully parked and that appellant had not violated any traffic laws. After appellant exited the car, she could plainly see that the keys were not in the ignition. There was simply no evidence to show that he had operated the car, was operating the car, or was about to operate the car under the influence of alcohol. Thus, she had no justifiable reason to grab the keys and detain him for suspicion of violating R.C. 4511.19. The only articulable factors cited by Trooper Kauffman were appellant's odor of alcohol and his disorientation. These factors, however, were discounted by the trial court, which (as noted above) found "indications that [appellant] was not drunk." Even if her observations had been accepted by the trial court, there is still no law that prohibits an intoxicated person from "sleeping it off" in a car. Trooper Kauffman simply did not have a reasonable suspicion of criminal activity to effect a *Terry*-type detention in this case. Her actions were therefore in violation of both the Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution. The trial court correctly, albeit for erroneous reasons, ordered that the evidence obtained as a result thereof be suppressed.

In conclusion, while we agree that the trial court erred in finding this to be an arrest situation, we nevertheless conclude that it reached the correct result. This

case does not involve an arrest but, rather, a *Terry*-type detention. Law enforcement officials are not required to show probable cause in these cases, only a "reasonable suspicion" of criminal activity. Trooper Kauffman was unable to supply specific and articulable facts to substantiate such a suspicion and justify the detention. Therefore, the evidence obtained as a result thereof was properly suppressed. The state was not prejudiced by the lower court's mistaken analysis and, thus, its two assignments of error will be overruled. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

KLINE, J., concurs.

HARSHA, J., concurs as to Assignment of Error I but dissents as to Assignment of Error II.