OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas, wherein appellant, Robert Adams, pled no contest to one count of possession of cocaine, a fifth-degree felony.
 {¶ 2} On March 3, 2002, at approximately 6:45 in the morning, the Madison Township Police Department received a call about a single car accident. When police arrived on the scene, they discovered a car in a ditch. No driver or passengers could be located at the scene. Witnesses at the scene had told the police dispatcher that they saw a man in a white T-shirt dressed "casual to the area," leave the car and head out on foot. This cursory description was relayed to Officer Paroska at the scene of the accident.
 {¶ 3} The car's license plate was also run through the LEADS system, which returned a local address. Officer Paroska was instructed by another officer to go to the address retrieved through LEADS. Officer Paroska got in his cruiser and decided to drive around a bit and look for "anyone walking" in an attempt to locate an individual matching the description given.
 {¶ 4} After driving around the general proximity surrounding the scene of the accident, Paroska noticed Adams walking down the road. Adams was dressed in a green, hooded sweatshirt with a white T-shirt underneath. Officer Paroska decided to stop Adams as he was "the only guy walking around at 7:00 in the morning, so I figured it was him."
 {¶ 5} He stopped Adams and inquired as to where Adams was going. Adams replied that he had just had a fight with his girlfriend, who lived on nearby Green Road, and he was out for a walk. Paroska asked him if he knew anything about the car in the ditch. Adams replied that he did not. Paroska then asked Adams if he could see some identification. Adams produced his driver's license. As Paroska held the license, he again asked Adams where he was going. Adams replied he was from the Cleveland area and his mother was on her way to pick him up.
 {¶ 6} Paroska then ran a check of Adams' license but did not immediately return it. He then asked Adams if he would accompany him to the scene of the accident. Adams said he would. Paroska informed Adams that he would need to perform a protective pat-down search before Adams could get into the police cruiser. At this point, Paroska noticed that Adams' right hand was "balled up" as if he were holding something. He asked Adams to put out his hand, palm up. According to Paroska, Adams then "made a quick movement from his right hand to his left hand, he attempted to conceal something." The officer then grabbed Adams and a brief struggle ensued. Paroska tried to get Adams' arms and hands under control. As this was occurring, Adams was attempting to make movements towards his mouth, and Paroska became concerned that Adams was attempting to swallow the contents of his hand and he would lose the evidence.
 {¶ 7} The struggle continued until Adams finally submitted. Paroska asked him what he was holding. Adams told Paroska that it was cocaine and, then, dropped the container to the ground. Paroska retrieved it and noted it was a white, powdery substance that appeared to be cocaine. He then placed Adams under arrest.
 {¶ 8} On May 10, 2002, Adams was indicted on one count of possession of cocaine, a fifth-degree felony. On July 12, 2002, Adams filed a motion to suppress, asserting that all evidence obtained was the result of an illegal search and seizure, as Officer Paroska had no probable cause or specific and articulable facts upon which to base an investigatory stop. Moreover, Adams contends that the scope of the investigatory stop was exceeded when Paroska held on to Adams' license without running a check on it. After a hearing on the matter, the motion was denied. On October 18, 2002, Adams withdrew his previous not guilty plea and pled no contest to the charge. Adams was convicted of the charge and was subsequently sentenced to six months imprisonment.
 {¶ 9} Adams presents a single assignment of error on appeal:
 {¶ 10} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress."
 {¶ 11} Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses.[1] Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.[2]
Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.[3]
 {¶ 12} Contact between the police and citizens fall within three main types: (1) a consensual encounter; (2) a brief detention pursuant to Terry v. Ohio;[4] and (3) a full fledged arrest.[5] An officer may approach an individual in a street or other public place for the purposes of a consensual encounter. A consensual encounter is not a seizure, so no Fourth Amendment rights are invoked.[6] The individual must be free to terminate the consensual encounter or decline the officer's request.[7] A Fourth Amendment seizure has taken place "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."[8]
 {¶ 13} Police may briefly detain an individual where a police officer observes unusual conduct, which leads him reasonably to conclude in light of his experience that criminal activity may be afoot.[9] To justify this stop, the officer "must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant an intrusion."[10]
 {¶ 14} Police may approach an individual, engage in conversation, and request identification, all under the purview of a consensual encounter.[11] The Supreme Court has identified a variety of factors that may cause an encounter between the police and a citizen to lose its consensual character.[12] Among the factors are the presence of multiple police officers, the displaying of a weapon by the police, the use of language suggesting that compliance with police requests is compelled, and the physical touching of the citizen.[13] An encounter that is consensual at the outset can transform into a Fourth Amendment seizure if the police utilize one or more of these coercive tactics.[14]
 {¶ 15} The second category is the investigatory detention, otherwise known as a "Terry stop." A Terry stop occurs when a police officer justifiably conducts an investigative stop of an individual based upon a reasonable and articulable suspicion that the individual is engaged in criminal activity.[15]
 {¶ 16} In the instant case, Officer Paroska, having just left the scene of a single-car accident, was patrolling the immediate area looking for an individual matching the brief description provided of a man in a white T-shirt "dressed casual to the area." Officer Paroska testified at the suppression hearing that he was not clear as to what "casual to the area" meant. He offered that he thought it was someone in "overalls or flannel" due to the rural nature of the area. However, as it was a rural area with no sidewalks, he noted there was typically little, if any, pedestrian traffic. Paroska noted Adams in close proximity to the accident, wearing a white T-shirt under a hooded sweatshirt, walking along the road. It was 7:00 a.m. on a Sunday morning in early March. Officer Paroska then initiated the consensual encounter with Adams.
 {¶ 17} After reviewing the facts of the instant case, we conclude that initially Adams was involved in a consensual encounter with Officer Paroska. Paroska approached him and engaged in conversation, requested identification, and asked appellant if he would accompany him to the scene of the accident, all hallmarks of a consensual encounter.[16] The encounter then garnered Fourth Amendment implications when, after appellant agreed to accompany the officer to the scene of the car accident, Officer Paroska performed a protective pat-down search of Adams, noticed the object in his hand, and asked Adams to reveal what he was holding in his hand The struggle then ensued. At that point, Paroska had a reasonable and articulable suspicion that Adams may be engaged in criminal activity to-wit: a possible weapon or contraband in his possession.
 {¶ 18} In its judgment entry, the trial court noted that Adams gave two conflicting answers when Officer Paroska inquired as to where he had come from, thus giving Officer Paroska the reasonable belief that Adams was engaged in criminal activity. However, in looking at Adams' responses, we do not find them to be necessarily conflicting. Adams initially responded that he had an argument with his girlfriend, who lived a few streets over, and he was out for a walk. Upon further inquiry, he stated that he came from Cleveland and his mother was on her way to pick him up. We do not find these statements to be mutually exclusive. He could have resided in Cleveland, had an argument with his girlfriend who lived nearby, and was then walking and waiting for his mother to pick him up. As noted in the foregoing, however, the encounter between Officer Paroska and Adams took on Fourth Amendment implications when Officer Paroska began the protective pat-down search and noticed the object in Adams' hand Thus, whether Adams' stories were conflicting and provided reasonable suspicion of criminal activity was not relevant, as it occurred during the consensual encounter.
 {¶ 19} Therefore, we hold that the trial court did not err in denying Adams' motion to suppress. The trial court's findings of fact were supported by competent, credible evidence in the form of Officer Paroska's testimony. Upon accepting those factual findings as true, we conclude that no Fourth Amendment violation occurred. Adams' assignment of error is without merit.
 {¶ 20} The judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
Grendell and Rice, JJ., concur.
[1] (Citation omitted.) State v. Smith (1991),61 Ohio St.3d 284, 288.
[2] State v. Retherford (1994), 93 Ohio App.3d 586, 592.
[3] State v. McNamara (1997), 124 Ohio App.3d 706, 710.
[4] Terry v. Ohio (1968), 392 U.S. 1.
[5] State v. Long (1998), 127 Ohio App.3d 328, 333.
[6] Florida v. Bostick (1991), 501 U.S. 429.
[7] Id. at 439.
[8] United States v. Mendenhall (1980), 446 U.S. 544, syllabus.
[9] Terry v. Ohio, at 21.
[10] Id.
[11] Bostick, at 434-435.
[12] Mendenhall, at 554.
[13] Id.
[14] Willowick v. Sable (Dec. 12, 1997), 11th Dist. No. 96-L-189, 1997 Ohio App. LEXIS 5562, at *11.
[15] Terry v. Ohio, at 21.
[16] Bostick, at 434-435.