[Cite as *State v. Leasock*, 2018-Ohio-1774.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-T-0072** |
| JOSEPH ANTHONY LEASOCK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas.
Case No. 2016 CR 00604.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor; *Ashleigh Musick* and *Diane Barber*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Joseph Anthony Leasock, appeals from the July 5, 2017 entry on sentence of the Trumbull County Court of Common Pleas. Appellant was found guilty of Robbery after a jury trial. Appellant contends his conviction was against the manifest weight of the evidence. For the following reasons, the judgment of the trial court is affirmed.

{¶2} On September 12, 2016, appellant was indicted by the Trumbull County Grand Jury of one count of Robbery, a second-degree felony in violation of R.C. 2911.02(A)(2). He entered a plea of not guilty.

{¶3} A superseding indictment filed on January 4, 2017, included a repeat violent offender specification pursuant to R.C. 2941.149 with the Robbery charge. Appellant again entered a plea of not guilty.

{¶4} The matter proceeded to a jury trial on March 20, 2017. The jury found appellant guilty of Robbery.

{¶5} At trial, Anthony Palozzo testified he operates a business out of his residence and lives with his girlfriend, Heather, and two German Shepherds, "Shultz" and "Chloe." On July 21, 2016, John Serratta paid him an unexpected visit at his residence. Mr. Palozzo testified he gave Mr. Serratta a $50 bill to go buy a 12-pack of beer. Mr. Palozzo explained he had "probably a couple thousand dollars" in his left pants pocket. The money was both personal and for his business, and he testified Mr. Serratta saw all the money. Mr. Serratta returned with "35 or 38 bucks." After drinking a few beers, Mr. Serratta indicated he would come back later to play pool.

{¶6} At around 9:30 p.m., Mr. Serratta returned with appellant, Robert Brian Leasock ("Brian"), and an unidentified female. Appellant and Brian played pool, while Mr. Palozzo talked to Mr. Serratta. Mr. Palozzo testified the unidentified female remained outside with "Chloe."

{¶7} Sometime later, appellant, Brian, and Mr. Serratta were outside smoking cigarettes and talking about "beating people up and robbing people." Mr. Palozzo testified he was standing in the doorway and announced he was going to bed. Mr.

2

Palozzo testified Brian then threatened him and began coming up the steps to the doorway. Mr. Palozzo attempted to shut the door, but the door was pushed open. Mr. Palozzo testified he fell backwards, and Brian grabbed him. Appellant took off Mr. Palozzo's glasses and threw them, and appellant and Brian punched him in the face. Mr. Palozzo broke away, but Brian grabbed him from behind and attempted to pull him down to the ground, while appellant punched him in the face. When appellant and Brian could not get Mr. Palozzo to the ground, appellant stated they would have to kill him. Brian continued to restrain Mr. Palozzo, while appellant searched through his shirt pocket. Mr. Palozzo testified they ripped his shirt pocket. They took approximately $40 and pulled his cell phone from his pocket. When "Shultz" came around the corner, the attack stopped, and appellant and Brian left. After appellant and Brian left, Mr. Palozzo testified he could not find "Chloe" and thought they had taken her. He further testified he sustained an injury to his nose and bruising over his arms, chest, and face from the attack. He did not go to the hospital but took Advil to relieve the pain from the injuries.

{¶8} Mr. Palozzo testified he woke up Heather, and she called 911. The recording of the 911 call was entered into evidence and played for the jury. Mr. Palozzo testified he did not know the last names of appellant and Brian but was able to confirm their identities by making phone calls and looking at pictures on Facebook. Mr. Palozzo testified he reported to police that appellant and Brian took money from him and that his cell phone and dog were missing. The police took photos of Mr. Palozzo's injuries, and those photos were shown to the jury and entered into evidence.

{¶9} Mr. Palozzo testified that, sometime after the police left, he found his phone under a shelf, approximately 15 to 20 feet away from where the incident

3

occurred.  Mr. Palozzo testified no part of the struggle took place near where the phone was found.  "Chloe" was also found.

{¶10}  On cross-examination, Mr. Palozzo testified that appellant and Brian went through his shirt pocket.  Defense counsel entered the police report of the incident into evidence.  When shown the report, Mr. Palozzo acknowledged it contained no mention of stolen money.

{¶11}  Officer Donald Fridley testified that on July 21, 2016, at around 11:00 p.m., he and Officer Wert responded to a call of an assault at Mr. Palozzo's residence.  Officer Fridley testified Mr. Palozzo reported Brian and appellant were hitting him and going through his pockets.  Officer Fridley observed redness to Mr. Palozzo's skin, a bloody rag, and that Mr. Palozzo appeared "real nervous, real jittery when explaining what happened."  Officer Fridley further testified Mr. Palozzo mentioned a stolen cell phone and dog but did not advise any cash was stolen.  Officer Fridley testified Officer Wert made the police report.

{¶12}  Detective Dan Lowery testified that on July 25, 2016, he was dispatched to Mr. Palozzo's residence to investigate the July 21, 2016 incident.  Detective Lowery spoke with Mr. Palozzo, took pictures, confirmed the identities of the suspects, and gave Mr. Palozzo a voluntary statement form.  Mr. Palozzo informed him the dog and cell phone had been recovered but that there was money stolen from him on the night of the incident.  Mr. Palozzo also indicated it was not uncommon for him to have a couple thousand dollars in cash.  Detective Lowery picked up the voluntary statement a couple days later; Mr. Palozzo indicated Heather had helped him complete it.  Detective Lowery testified Mr. Palozzo included in the statement that money was stolen from him.

4

{¶13} On cross-examination, defense counsel showed Detective Lowery his police report. Detective Lowery affirmed that in his report he had written Mr. Palozzo reported appellant and Brian were digging through his pockets and took money.

{¶14} On June 28, 2017, appellant was sentenced to a mandatory prison term of eight years. The court imposed an additional 1,470 days for a violation of post-release control in case No. 007-CR-525, to be served consecutively to his sentence on the Robbery charge. Appellant was not sentenced on the repeat violent offender specification because the jury was not presented with a factual question relating to the specification.

{¶15} Appellant filed a timely notice of appeal. His sole assignment of error states:

{¶16} "Appellant's conviction is against the manifest weight of the evidence."

{¶17} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "This court [is] not in a position to view the witnesses who testified below and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Long*, 127 Ohio App.3d 328, 335 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's

determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶18} R.C. 2911.02 provides, in pertinent part,

(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

* * *

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another[.]

* * *

(B) Whoever violates this section is guilty of robbery. * * *

Further, R.C. 2913.02(A) defines Theft, stating, in pertinent part: "No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * (1) Without the consent of the owner or person authorized to give consent[.]"

{¶19} Appellant argues the record is devoid of evidence that anything was stolen from Mr. Palozzo because the cell phone and dog were recovered, and Mr. Palozzo's testimony regarding the theft of money was not credible, as the initial police report did not indicate money was stolen.

{¶20} The state presented the testimony of Mr. Palozzo and of two police officers who investigated the attack. The defense presented Officer Wert's and Detective Lowery's respective incident reports, emphasizing the report immediately following the incident did not mention money was stolen, but the report from days after the incident indicated money was stolen. It was within the purview of the jury to

6

determine Mr. Palozzo's credibility and make reasonable inferences from the facts presented.

**{¶21}** Moreover, the jury was instructed on the definitions of Robbery and Complicity. Therefore, appellant could also have been convicted of Robbery under the theory he *attempted* a theft offense or under the theory he aided or abetted another in the commission of the Robbery. The state presented evidence from which the jury could have found appellant guilty under either of those bases. Therefore, we cannot find the jury lost its way.

**{¶22}** Appellant's sole assignment of error is without merit.

**{¶23}** For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.

7