[Cite as *State v. Simpson*, 2019-Ohio-1408.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | : | **CASE NO. 2018-T-0060** |
| - vs - | : | |
| SHAUN RYAN SIMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2016 CR 00846.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor; *Christopher Becker* and *Ashleigh Musick,* Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Stephen A. Turner,* Turner, May & Shepherd, 185 High Street, N.E., Warren, OH 44481 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Shaun Ryan Simpson, appeals from the judgment of the Trumbull County Court of Common Pleas, after trial to the bench, convicting him of felony murder and tampering with evidence. For the reasons discussed in this opinion, the judgment is affirmed.

{¶2} On November 12, 2016, at approximately 10:50 p.m., 22-year old Becky Lynn Pyne was shot, just below her right shoulder, at her residence in Warren, Ohio.

She was taken to Trumbull Memorial Hospital by her boyfriend, later identified as appellant. Appellant left the wounded woman at the emergency room and returned to the residence to pick up the couple's two and one-half month old daughter, who was left unattended at the residence. After dropping the infant off with Ms. Pyne's grandmother, appellant returned to the hospital, where he was greeted by police.

{¶3} During his first interview with police, appellant stated he and Ms. Pyne were at their residence located at 229 South Leavitt Road in Warren, Ohio. He took his dog outside and Ms. Pyne followed him with their baby. Suddenly, an unknown white male, wearing a ski mask, appeared and stated "you have something of mine." The stranger then shot Ms. Pyne and fled on foot. When Warren police arrived at the residence, however, they observed blood near the front and back doors as well as significant amounts of blood throughout the home.

{¶4} The officers radioed Officer Adam Chinchic, who was taking appellant's statement at the time, that the incident appeared to have occurred inside the home. Appellant overheard the transmission and changed his story. Appellant indicated that the intruder followed him inside the residence, made the same cryptic statement, then shot Ms. Pyne.

{¶5} Meanwhile, unbeknownst to appellant, Ms. Pyne passed away from her injuries. According to the autopsy, the bullet entered below the right clavicle, travelled into the chest cavity, causing serious internal injuries, including the perforation of the right lung. The bullet was recovered during the autopsy; it was later determined that Ms. Pyne was shot at a distance of approximately 16 to 18 inches.

2

{¶6} At approximately 1:10 a.m. on November 13, 2016, appellant agreed to accompany Detective Wayne Mackey to the Warren Police Department where he waived his *Miranda* rights and provided a formal statement. Appellant maintained Ms. Pyne was shot by an unknown stranger. Det. Mackey also learned appellant was on the phone with a friend who was incarcerated in prison when the alleged white male entered the home and shot Ms. Pyne. After reviewing the details of appellant's statement several times, the detective informed appellant Ms. Pyne had died. Appellant immediately flew into a fit of hysterics; over the course of some 10 minutes, appellant paced the interview room, striking walls, howling invectives, and repeatedly expressing his disbelief.

{¶7} Det. Mackey investigated appellant's admission that he was on the phone when the incident occurred. Eventually, he contacted Justin Smith, the incarcerated individual with whom appellant indicated he was speaking when the shooting occurred. At the time, Mr. Smith was imprisoned at the Lake County Correctional Center. The detective then formally requested a copy of the recording of the prison phone call. On December 9, 2016, Det. Mackey received a copy of the recording of the November 12, 2016 phone call between appellant and Mr. Smith. The call occurred at 10:51 p.m. and the conversation was approximately a minute long. During the call, appellant stated Ms. Pyne was upset and being "sentimental." Mr. Smith asked to speak with Ms. Pyne, after which appellant states "[c]ome get this blunt before I shoot you and your baby." There is a brief pause, then the sound of a muffled popping noise, followed by the frenzied, yet indistinct sound of screaming. The call then abruptly ends.

{¶8} Det. Mackey subsequently obtained a warrant for appellant's arrest and, on December 12, 2016, appellant surrendered to the custody of the United States Marshal Service. Appellant requested to speak to Det. Mackey and, prior to doing so, waived his *Miranda* rights. During the interview, appellant stated that, after making the threatening statement to Ms. Pyne, he was waiving the firearm and it accidentally discharged. Appellant explained that, in the course of exiting the residence to take Ms. Pyne to the hospital, he grabbed the firearm and a separate magazine. On the way, he discarded them both. Appellant emphasized that he did not intend to shoot Ms. Pyne.

{¶9} Appellant was indicted on Count One, felony murder, an unspecified felony, with a firearm specification, in violation of R.C. 2903.02(B) & (D) and R.C. 2941.145; Count Two, felonious assault, a felony of the second degree, with a firearm specification, in violation of R.C. 2903.11(A)(2) & (D)(1)(a) and R.C. 2941.145; Count Three, murder, an unspecified felony, with a firearm specification, in violation of R.C. 2903.02(A) & (D) and R.C. 2941.145; and Count Four, tampering with evidence, a felony of the third degree, in violation of R.C. 2921.12(A)(1) & (B). Appellant pleaded not guilty. Appellant executed a waiver of jury trial, and the matter proceeded to trial before the bench.

{¶10} After receiving evidence, the trial court found appellant guilty of Count One, felony murder; Count Two, felonious assault; and Count Four, tampering with evidence. He was acquitted of Count Three, murder. The court proceeded directly to sentencing. The state agreed that Counts One and Two merged for purposes of sentencing and the state elected to proceed to sentencing on felony murder. Appellant was sentenced to 15 years to life on Count One and three years for the accompanying

4

firearm specification which was ordered to be served prior to and consecutive to Count One. Appellant was additionally sentenced to three years on Count Four, to be served concurrently with the sentence on Count One and the specification. Overall, appellant was sentenced to a term of 18 years to life imprisonment. He now appeals and assigns four errors which we will address out of order.

{¶11} Appellant's second assignment of error asserts:

{¶12} "The trial court erred when it found that appellant's waiver of a jury trial was voluntary, knowing, and intelligent."

{¶13} A jury waiver must be voluntary, knowing, and intelligent. Crim.R. 23; *State v. Ruppert*, 54 Ohio St.2d 263, 271 (1978). Waiver may not be presumed from a silent record. However, if the record shows a jury waiver, the conviction will not be set aside except on a plain showing that the defendant's waiver was not freely and intelligently made. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281 (1942). Further, "a written waiver is presumptively voluntary, knowing, and intelligent." *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, ¶37.

{¶14} Appellant argues that, despite his signed written waiver, the record "casts doubt" on whether appellant's waiver of his right to a jury trial was truly voluntary, knowing, and intelligent. We do not agree.

{¶15} Here, on record, the trial court engaged in a lengthy explanation of the implications of waiving one's right to a jury trial. The court advised appellant that if he elected to proceed with a jury trial, he had the right to participate in selecting a jury as well as striking potential panel members. The court additionally explained that, if the matter were tried to a jury, all 12 members must unanimously agree on appellant's guilt

5

to convict him. Alternatively, the court noted that, if the case were tried to the bench, the judge would enter a decisive verdict and there would be no possibility of a mistrial via a hung jury. The following exchange then took place:

{¶16} The Court: Do you still wish to waive your right to a jury trial?

{¶17} The Defendant: No, sir.

{¶18} The Court: Do you still wish to waive your right to a jury trial?

{¶19} [Defense Counsel]: Do you want to try it to the judge or do you want to try it to a jury?

{¶20} The Defendant: Judge.

{¶21} [Defense Counsel]: Judge. So you do wish to waive your right to a jury trial?

{¶22} The Defendant: Correct.

{¶23} [Defense Counsel]: You wish to not have a jury?

{¶24} The Defendant: Right.

{¶25} The Court: All right. Does either counsel, can you think of anything that I have not asked regarding this waiver?

{¶26} [Defense Counsel]: No.

{¶27} [Prosecutor]: No, Your Honor. I think State of Ohio versus Lomax, you've covered it. We are on the record, we are in open court, and the Court is personally addressing the defendant. The only thing left is he needs to sign the written waiver.

{¶28} * * *

{¶29} The Court: [Defense Counsel], you think there's anything I have to address?

{¶30} [Defense Counsel]: Well, Your Honor, no, but I will supplement what was said by you to talk about counsel's role in that process.

{¶31} The Court: All right.

{¶32}  * * *

{¶33}  [Defense Counsel]:  This is something which the defendant has discussed with me in the past and we have discussed at length everything that you just put on record, including substantive error.

{¶34}  The Court:  All right.

{¶35}  [Defense Counsel]:  The defendant has said to me in the past, given the circumstances and everything, he has felt that it might be a better way to go to try it to the Court.  He again reiterated that this morning.  After my last visit to him I asked him to continue to think about it, and I brought up more than one occasion the issue of a hung jury versus a non-hung jury.  This morning he indicated to me that he's thought about it at length and he still wants to go with that process.

{¶36}  The Court: All right.

{¶37}  [Defense Counsel]:  That is his choice.

{¶38}  The Court: All right.  So I understand, you know that you do have a right to a jury trial if you choose?

{¶39}  The Defendant:  Yes, sir.

{¶40}  The Court: And you know you have the right to help select a jury?  You don't have the right to help select me.  I'm your judge. That's it.

{¶41}  The Defendant:  Yes, sir.

{¶42}  The Court:  Okay?  Do you understand that?

{¶43}  The Defendant: Yes, sir.

{¶44}  The Court:  Do you have any questions at all?

{¶45}  The Defendant:  No, sir.

{¶46}  The Court:  Do you still wish to waive your right to a jury trial?

{¶47}  The Defendant:  Correct.

{¶48}  Appellant was then given the written waiver form which he signed.  After signing, the court asked appellant if he signed it freely and voluntarily, without promises

or threats. Appellant responded in the affirmative and the court made a formal finding that appellant made a knowing, intelligent, and voluntary waiver of his right to a jury trial. In light of the thorough nature of the discussion on record, we conclude the trial court did not err in drawing this conclusion.

{¶49} Although appellant made a preliminary statement that he did not wish to waive, the lengthy dialogue that followed demonstrates he simply made a misstatement. This conclusion is bolstered by defense counsel's assertion that he and appellant had discussed the issue at length, including the various implications of waiver, and appellant expressed his personal informed preference to have the matter tried to the bench. Appellant's written waiver is presumed knowing, voluntary, and intelligent. *See Fitzpatrick, supra.* He has failed to overcome that presumption, i.e., there is nothing in the record, nor in appellant's brief suggesting the waiver was involuntary. Accordingly, we hold the trial court did not err in finding the waiver was proper.

{¶50} Appellant's second assignment of error is without merit.

{¶51} Appellant's first assignment of error provides:

{¶52} "The appellant received ineffective assistance of counsel in violation of his rights pursuant to the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."

{¶53} The test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), is the proper standard to apply in assessing whether a defendant has raised a genuine issue as to the ineffectiveness of counsel. To prevail on an ineffective assistance of counsel claim, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the

8

defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389 (2000), citing *Strickland* at 687-688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances." *Strickland* at 688. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel*, 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶10.

**{¶54}** Appellant first argues counsel was ineffective for interjecting into the record his conversations with appellant regarding his desire to waive his right to a jury trial. Appellant, however, fails to elucidate how counsel's representations were unreasonable. Counsel made the statements to assure the court that he and appellant had discussed the impact and implications of waiving his right to a jury trial and that appellant had carefully considered the issue prior to the court engaging him on record. This supplemental point was offered to provide the court with a context, beyond what occurred on record, for making its substantive finding relating to the voluntary, knowing, and intelligent nature of appellant's waiver. Moreover, even assuming counsel's statements were improper, appellant fails to establish how he was prejudiced. Appellant repeatedly confirmed he wished to proceed with a bench trial; and, even had counsel remained silent regarding his understanding of appellant's intentions, there is nothing to suggest appellant would have changed his mind and proceeded with a jury. Appellant's argument lacks merit.

**{¶55}** Next, appellant asserts counsel was ineffective for allowing him to testify because it could only lead to "damaging admissions." Again, we disagree.

9

{¶56} It is well-established that even questionable trial strategy does not require a finding of ineffective assistance of counsel. *See State v. Smith*, 89 Ohio St.3d 323, 328 (2000). Appellant's testimony reflected his vehement position that the shooting was an accident and he had no intention to harm Ms. Pyne, despite the surrounding circumstances. Although the court had some indication that this was appellant's main defense, counsel could reasonably conclude that hearing his direct testimony on this point may be sufficiently forceful to create reasonable doubt on the murder, felony murder, and felonious assault charges. We therefore conclude counsel's decision to put appellant on the stand was sound trial strategy.

{¶57} Appellant's first assignment of error lacks merit.

{¶58} We shall address appellant's third and fourth assignments of error together. They provide:

{¶59} "[3.] The verdict of guilty on the count one of murder was against the manifest weight of the evidence.

{¶60} "[4.] The verdict of guilty on the count two of felonious assault was against the manifest weight of the evidence."

{¶61} A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994).

{¶62} Appellant was convicted on one count of felony murder, in violation of R.C. 2903.02(B), which provides: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

{¶63} The felony murder conviction was predicated on his conviction for felonious assault, in violation of R.C. 2903.11(A)(2), which provides: "No person shall knowingly do either of the following: * * * Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

{¶64} The requisite mens rea for felonious assault is "knowingly." R.C. 2901.22(B) provides:

{¶65} A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶66} Appellant argues his testimony at trial established that he thought the magazine had been previously removed from the firearm at issue. Accordingly, he maintains the weight of the evidence did not support the conclusion that he knowingly caused physical harm to Ms. Pyne. We do not agree.

{¶67} After hearing the evidence, the trial court made the following observations before entering its verdicts:

{¶68} [T]he defendant's testimony at trial in this case has clearly been impeached by many prior inconsistent statements as well as the

11

fact that he clearly admitted to hiding evidence in this case that could have been valuable but is forever lost, and that was the firearm used to facilitate the offense. The Court finds that the defendant's testimony is totally incredible based upon the number as well as the substantial nature of his inconsistent statements.

{¶69} In finding appellant guilty of felonious assault, the trial court stated:

{¶70} [T]here is overwhelming evidence that the defendant committed felonious assault as charged in Count 2 of the indictment. In the previously mentioned crucial tape, defendant clearly makes threats to Becky Pyne to use a deadly weapon if she did not comply with his order to get the blunt. The gun was used directly after the threat and the wound to the shoulder from a distance of 16 to 18 inches and had to pointed at the victim. The defendant is responsible for the foreseeable consequences of that shot, which includes felonious assault as well as felony murder.

{¶71} When reviewing a manifest weight argument, "this Court [is] not in a position to view the witnesses who testified below and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony." *State v. Long,* 127 Ohio App.3d 328, 335 (4th Dist.1998) (citations omitted). Therefore, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the factfinder's determinations of credibility. *State v. Tribble,* 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30, citing *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶72} Deferring to the trial court's determinations, there was sufficient, credible evidence to support the verdicts at issue. We therefore hold appellant's convictions for felonious assault and felony murder are supported by the manifest weight of the evidence.

{¶73} Appellant's third and fourth assignments of error lack merit.

12

{¶74} For the reasons stated in this opinion, the judgment of the Trumbull County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, P.J.,

MATT LYNCH, J.,

concur.