[Cite as *State v. Wem*, 2014-Ohio-2326.]

COURT OF APPEALS
COSHOCTON COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13 CA 20 |
| SHAWN C. WEM | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING: Criminal Appeal from the Municipal Court, Case No. TRC 1300616


JUDGMENT: Affirmed


DATE OF JUDGMENT ENTRY: May 29, 2014


APPEARANCES:

For Plaintiff-Appellee

CHRISTIE M. L. THORNSLEY
ASSISTANT LAW DIRECTOR
760 Chestnut Street
Coshocton, Ohio 43812

For Defendant-Appellant

JEFFREY G. KELLOG
ASSISTANT PUBLIC DEFENDER
239 North Fourth Street
Coshocton, Ohio 43812

*Wise, J.*

{¶1}    Appellant appeals the July 29, 2013, decision of the Coshocton County Municipal Court denying his motion to suppress.

{¶2}    Appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶3}    On April 24, 2013, Rickie Workman an employee of the Coshocton Village Inn and Suites called the Coshocton County Sheriff to report a possible intoxicated driver. Mr. Workman identified himself and his place of employment and advised the dispatcher that a male who appeared to be intoxicated, later identified as Appellant Shawn C. Wem,  came into the hotel and took a large number of brochures from a rack located by the front door. (T. at 6). This rack of brochures is about 15 feet from the clerk's desk. (T. at 9). Mr. Workman stated that Appellant was stumbling and staggering. At one point, Appellant nearly fell down as he was looking at the brochures. (T. at 6) Appellant never spoke to Mr. Workman and never got close enough to him for Mr. Workman to smell the odor of alcohol. (T. at 6). Mr. Workman further testified that when Appellant left the lobby, he walked north. Mr. Workman knew there were no vehicles parked in that direction, so he went to the front door to watch Appellant. (T. at 6). He observed Appellant turn around and walk to the south end of the hotel. Appellant then got into his vehicle and drove toward McDonald's. Mr. Workman went back into the hotel and contacted the Sheriff's Office. (T. at 6).

{¶4}    The Dispatch Narrative stated: "Rick Workman of Coshocton Village Inn and Suites advised a male subject came into the hotel and took a bunch of brochures,

got into a silver Jeep Liberty and drove over to McDonalds drive-thru. FOE9857 was the license plate. Unit 42 went out for a test." (T. at 19).

{¶5} Deputy Adam Mast was dispatched to investigate. Dispatch advised Deputy Mast that "an employee of Coshocton Village Inn and Suites said a man had come in and picked up a bunch of brochures from their brochure rack and he appeared to be drunk and got in his silver or gray Jeep and wound up in the McDonald's parking lot. And the clerk said he appeared to be intoxicated." (T. at 14).

{¶6} Deputy Mast testified that when he arrived at McDonald's, Appellant's vehicle was stopped in the drive through. Deputy Mast parked his cruiser and approached Appellant's vehicle. Deputy Mast did not activate his sirens or lights. (T. at 16-17). Deputy Mast advised Appellant that he had received a report that Appellant was under the influence and asked that Appellant pull over so he could conduct field sobriety tests to see if Appellant was able to drive. (T. at 15-16). Deputy Mast reported that he could not smell the odor of alcohol at this time. Appellant pulled over into a parking spot. (T. at 16-17).

{¶7} Appellant was subsequently arrested and taken to the Coshocton County Jail for a breath test.

{¶8} On April 24, 2013, Appellant was charged two counts of Operating a Vehicle under the Influence in violation of R.C. §4511.19(A)(1)(a) and §4511.19(A)(1)(d).

{¶9} Appellant was set for arraignment on April 30, 2013. Appellant failed to appear on that date so a bench warrant was issued. Appellant was picked up on the

bench warrant and appeared for the arraignment on May 10, 2013. Appellant entered a not guilty plea.

**{¶10}** On July 12, 2013, Appellant filed a motion to suppress.

**{¶11}** On July 17, 2013, a hearing on the motion to suppress was held.

**{¶12}** On July 29, 2013, the trial court denied Appellant's motion to suppress.

**{¶13}** On August 7, 2013, Appellant entered a no contest plea.

**{¶14}** Appellant now appeals, assigning the following error:

<u>ASSIGNMENT OF ERROR</u>

**{¶15}** "I. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE."

I.

**{¶16}** Appellant argues that the trial court erred in finding reasonable suspicion of criminal activity in this case. We disagree.

**{¶17}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist .1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 1996–Ohio–134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal

standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶18}  There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See, State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141(4th Dist 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, Williams, supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶19}  In the case sub judice, Appellant challenges the stop of his vehicle. An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that "the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). But it requires something more than an "inchoate and unparticularized suspicion or hunch." *Terry v. Ohio,* 392 U.S. 1,

27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow,* 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed .2d 570 (2000).

**{¶20}** In the case sub judice, the police received a call from an identified informant. Where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip. *Id.* at 299, 720 N.E.2d 507. Courts have generally identified three classes of informants: the anonymous informant, the known informant from the criminal world who has provided previous reliable tips, and the identified citizen informant. *Id.* at 300, 720 N.E.2d 507. An identified citizen informant may be highly reliable, and therefore a strong showing as to other indicia of reliability may be unnecessary. *Id.* Thus, courts have routinely credited the identified citizen informant with greater reliability. *Id.*

**{¶21}** Here, Appellant does not contest that the caller in this case was a reliable identified citizen informant. Rather, Appellant asserts the officer lacked sufficient probable cause to effectuate the stop as the officer did not personally observe Appellant's impaired driving.

**{¶22}** In *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, the Ohio Supreme Court held:

**{¶23}** "Having resolved this issue, we emphasize that our categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity. Continuing

our review, we believe that the informant's basis of knowledge also furthers his credibility. Typically, a personal observation by an informant is due greater reliability than a secondhand description. *Gates,* 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545. Here, the citizen's tip constituted an eyewitness account of the crime. His version of that night was not mere rumor or speculation.  It was a firsthand report of the events as they happened. Also significant is the fact that the tip was an exact relay of the circumstances as they were occurring. Immediately upon witnessing the events, the citizen described them to the dispatcher. This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory.

{¶24} "We also believe the informant's motivation supports the reliability of his tip. According to the evidence, the informant reported that Weisner was weaving all over the road. He made this report from the perspective of a motorist sharing the road with another motorist driving erratically. We can reasonably infer from these circumstances that he considered Weisner a threat to him personally, as well as to other motorists and that he was motivated, therefore, not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety.

{¶25} "Taken together, these factors persuade us that the informant's tip is trustworthy and due significant weight. The informant was an identified citizen who based his knowledge of the facts he described upon his own observations as the events occurred. As a result, his tip merits a high degree of credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police

corroboration. Accordingly, the dispatch based upon this tip was issued on sufficient facts to justify Patrolman Roberts's investigative stop."

**{¶26}** "The simple corroboration of neutral details describing the suspect or other conditions existing at the time of the tip, without more, will not produce reasonable suspicion for an investigatory stop." *State v. Ramsey* (Sept. 20, 1990), Franklin App No. 89AP-1298, unreported. "A tip which standing alone would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work." *Id.*

**{¶27}** Upon review, we find that Mr. Workman's statements to the dispatcher included sufficient information to provide reasonable suspicion that Appellant was operating a motor vehicle while under the influence of alcohol. Mr. Workman provided the dispatcher with the make and color of Appellant's vehicle, along with the license plate number. Mr. Workman advised dispatch that he witnessed Appellant stumbling, staggering and nearly falling down in the hotel lobby. He further relayed to dispatch that he followed Appellant outside where he observed Appellant head in the wrong direction before eventually locating his car and driving away in the direction of the McDonald's restaurant.

**{¶28}** Accordingly, the trial court did not err in finding there was reasonable articulable suspicion for the stop based on suspicion of criminal activity.

{¶29} Appellant's sole Assignment of Error is overruled.

{¶30} For the foregoing reasons, the judgment of the Municipal Court of Coshocton County, Ohio, is hereby affirmed.


By: Wise, J.

Hoffman, P. J., and

Delaney, J., concur.


JWW/d 0502