[Cite as *State v. Miller*, 2014-Ohio-2327.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 13-CA-52 |
| TODD M. MILLER | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Fairfield County Court of Common Pleas, Case No. 2012-CR-545 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 30, 2014 |
| APPEARANCES: | |


| For Defendant-Appellant | For Plaintiff-Appellee |
|---|---|
| SCOTT P. WOOD<br>Dagger, Johnston, Miller,<br>Ogilvie & Hampson<br>144 East Main Street<br>P.O. Box 667<br>Lancaster, Ohio 43130 | GREGG MARX<br>Prosecuting Attorney<br><br>By: Jocelyn S. Kelly<br>Assistant Prosecuting Attorney<br>Fairfield County, Ohio<br>239 W. Main Street, Ste. 101<br>Lancaster, Ohio 43130 |

*Hoffman, P.J.*

{¶1}    Defendant-appellant Todd Miller appeals the May 8, 2013 Judgment Entry entered by the Fairfield County Court of Common Pleas denying his motion to suppress. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}    On November 28, 2012, officers of the Fairfield County Sheriff's Office and the Street Crime Reduction and Apprehension Program ("SCRAP") responded to information received relative to the manufacture of methamphetamine at 106 East Walnut Street, Pleasantville, Fairfield County, Ohio.  The officers arrived at the address and immediately detected an odor associated with the manufacture and production of methamphetamine.  Upon further investigation, the officers observed objects in a nearby dumpster associated with the manufacture and production of methamphetamine. The officers proceeded to knock on the front and back doors of the residence, but no one responded.  The officers then spoke with neighbors near the property, who confirmed a male, matching Appellant's description, resided at the residence.

{¶3}    The officers made the decision to enter the premises based upon exigent circumstances.  At the same time, Bill Burt, the property manager for McCafferty Rentals arrived and notified the officers the residence was a rental property owned by McCafferty Rentals.  Mr. Burt identified the lessee as Melissa Davis.  Appellant was not listed as a lessee to the property.  Mr. Burt called Melissa Davis at her work, and informed her deputies were at her home and wanted to enter.  According to Mr. Burt, Ms. Davis provided consent for them to do so.

{¶4} Mr. Burt then provided the officers with a key to the residence. Upon entering the residence, the officers discovered Appellant, along with items associated with the manufacture, production and use of methamphetamine located inside the residence. As a result, the officers arrested Appellant.

{¶5} On December 7, 2012, Appellant was indicted on one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A), a felony of the first degree, and one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.04(A)(1), a felony of the second degree.

{¶6} On February 20, 2013, Appellant filed a motion to suppress all evidence obtained as a result of the entry and search of his residence without a warrant.

{¶7} The trial court conducted a hearing on the motion to suppress on April 1, 2013, and April 10, 2013. Via Judgment Entry filed May 8, 2013, the trial court denied Appellant's motion to suppress.

{¶8} On June 24, 2013, Appellant entered a plea of no contest to the charges. The State agreed the offenses merged and elected sentencing as to the illegal assembly count only. The trial court sentenced Appellant to the mandatory minimum period of incarceration of three years.

{¶9} Appellant appeals, assigning as error:

{¶10} "I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE."

I.

{¶11} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332,

713 N.E.2d 1 (4th Dist .1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶12} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams,* supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶13} In reviewing a trial court's ruling on a motion to suppress, the weight of the evidence and credibility of witnesses are primarily for the trier of fact. *State v. Smith,* 80 Ohio St.3d 89, 105–106, 684 N.E.2d 668 (1997).

{¶14} Appellant asserts Melissa Davis' consent to the warrantless search of her residence was not freely and voluntarily given; therefore, the evidence resulting from the warrantless search should be suppressed.

{¶15} At the suppression hearing, Mr. Burt, the property manager, testified:

{¶16} "Q. Okay. So you stopped and talked to the officers. And then did you speak with Melissa Davis that day?

{¶17} "A. Yes, I did.

{¶18} "Q. And why did you speak with her?

{¶19} "A. I called her at that point and told her that there was officers at the house and they were looking for this gentleman, did she know him, and she said yes. And then she said that it was her boy friend.

{¶20} "And I said, 'Well, the officers would like to enter the house.' Of course, I have keys on the truck.

{¶21} "And I said, 'The officers would like to enter the house. Do you have a problem with that?

{¶22} "And she said, 'No I don't. I don't have anything to hide.' She said, 'Go ahead and give them a key.'

{¶23} "And then I handed the phone to the officer that was standing by me and she told him the same thing. And I gave them the key and they entered the house.

{¶24} "Q. Now, you say you handed the phone to one of the officers there.

**{¶25}** "A. Yes.

**{¶26}** "Q. Did you overhear the conversation between the two of them?

**{¶27}** "A. Yes.  I was standing right there.

**{¶28}** "Q. Did you hear both sides of the conversation?

**{¶29}** "A. Yes, because the cell phone was on loud and I could hear her talking to him.

**{¶30}** "Q. Okay.  What was the demeanor of the officer who spoke to her that day? What was his tone of voice?

**{¶31}** "A. It was a normal tone of voice.  He was basically - - he asked her the same thing that I did and she answered him that, you know, it was for him to enter the house.

**{¶32}** "Q. Did he mention getting a search warrant to her?

**{¶33}** "A. He told her that at that time, he did not have one. I did hear that, that he did not have one, but they could possibly get one.  And that was basically the end of the conversation.

**{¶34}** "And she said, 'Go ahead and enter.'

**{¶35}** "And with me overhearing that, I didn't have a problem with it.  And I handed them the keys and they went in at that point.

**{¶36}** "Q. Did you mention a search warrant to her when you'd spoken to her before handing the phone over?

**{¶37}** "A. I told her, I said, 'They're here and they want to enter, but they have stated they don't have a search warrant.  Do you have a problem with them going in?'

**{¶38}** "And she said, 'No.'

**{¶39}** "And that's when she said, 'I have nothing to hide. They're more than welcome to go in."

**{¶40}** Tr. at 102-104.

**{¶41}** Melissa Davis also testified to the telephone conversation,

**{¶42}** "Q. Who called you first - - again, regarding the entry into your home, who was the first person to contract you by phone?

**{¶43}** "A. The landlord, Bill.

**{¶44}** "Q. Okay. And that's Mr. Burt?

**{¶45}** "A. Yes.

**{¶46}** "Q. And what was the nature of that conversation? Do you recall that conversation?

**{¶47}** "A. Yes.

**{¶48}** "Q. And what was the nature of that conversation?

**{¶49}** "A. He called and said that he had members of the Fairfield County SCRAP team wanting to get into my home. And then he turned the phone over to Detective Campbell.

**{¶50}** "Q. Okay. So that's all he said was, 'There's law enforcement officers here at your house and they want to get in.'

**{¶51}** "A. That's correct.

**{¶52}** "Q. And then he handed the phone over?

**{¶53}** "A. Yes.

**{¶54}** "Q. Did he ask you any questions?

**{¶55}** "A. No.

**{¶56}** "Q. So when he handed the phone over, who did you speak with?

**{¶57}** "A. Detective Campbell.

**{¶58}** "Q. Now, did you know Campbell - - Officer Campbell prior to this date?

**{¶59}** "A. No.

**{¶60}** "Q. This is the first time you ever talked to him?

**{¶61}** "A. Correct.

**{¶62}** "Q. And what was the nature of that conversation, if you remember?

**{¶63}** "A. He said to me that they had got a report of an odor coming from my house the night before and that they wanted permission to come into the house.

**{¶64}** "He said, 'We're going in regardless, so you can give me permission or I can kick the door in.  That's your choice.'

**{¶65}** "At that point, I told him he could go in.

**{¶66}** "Q. Okay.  So - - and this is important.  You're testifying - - and how sure are you that he said that?

**{¶67}** "A. 100 percent sure.

**{¶68}** "Q. So he gave you the alternative.  He said, 'We're going in no matter what.'

**{¶69}** "A. Yes, he did.

**{¶70}** "Q. He said, 'You can give us permission and we can unlock the door and go in without breaking anything, or we're going to break the door and go in.'

**{¶71}** "A. That's correct.

**{¶72}** "Q. Those are the only two choices he gave you?

**{¶73}** "A. Yes.

**{¶74}** "Q. And of those two choices, why did you choose the consent as opposed to him breaking the door down?

**{¶75}** "A. At that time, it was going through my head that I don't want to have to pay for a door and - - -

**{¶76}** "Q. You don't want damage to your place.

**{¶77}** "A. Correct.

**{¶78}** "Q. And you don't want to pay for it.

**{¶79}** "A. That's correct.

**{¶80}** "Q. So that's why you gave him consent.

**{¶81}** "A. Yes.

**{¶82}** "Q. Did you think you had a choice as to whether or not you could consent to let him in or not?

**{¶83}** "A. No.  I thought I had to let him.

**{¶84}** "Q. And if you did not give him consent, what was going to happen?

**{¶85}** "A. He was going to break in my door and go in anyways."

**{¶86}** Tr. at 122-125

**{¶87}** Detective Lyle Campbell testified,

**{¶88}** "Q. Okay.  So what involvement or what information did you get from Mr. Burt, that the lessee was Melissa Davis; correct?

**{¶89}** "A. Correct.

**{¶90}** "Q. And what, if anything, did you do after learning that?

**{¶91}** "A. He advised that he would make contact with her.  He called her from his cell phone, put it on speaker phone.

{¶92} "Q. Okay.

{¶93} "A. He had her work number, I guess.

{¶94} "Q. Okay.  And did you speak with her?

{¶95} "A. Yes, I did.

{¶96} "Q. What, if anything, did you say to her?

{¶97} "A. I advised Melissa exactly why we were there; that we had reason to believe that there was meth being manufactured in her residence and asked her for verbal consent.  Like I said, it was on speaker phone, so Sergeant Hamler, I believe, was present, along with maybe Lieutenant Voris and Mr. Burt.  I asked her for consent to enter the residence.  Like I said, Mr. Burt was on the speaker phone too, so he was able to hear that she was giving me consent.  Like I said, he's the one that provided the number that we made contact with; therefore, I would assume he would know who it was.  It wasn't like I dialed the number.

{¶98} "She said that's fine.  He provided us with a key and went in the residence.

{¶99} "Q. Did she identify herself on the phone to you as Melissa Davis?

{¶100} "A. Yes.

{¶101} "Q. Okay.  Did you promise her anything in order to obtain her consent?

{¶102} "A. No, I did not.

{¶103} "Q. Did you threaten her?

{¶104} "A. No, I did not.

{¶105} "Q. Did you inform her that you planned to get a warrant if she did not give consent?

{¶106} "A. No."

{¶107} Tr. at 19-21.

{¶108} The trial court's May 8, 2013 Judgment Entry includes Findings of Fact, which state,

{¶109} "11. Deputy Campbell asked Mr. Burt about the lessee of the residence. He stated that he knew that person to be Melissa K. Davis. Mr. Burt was unfamiliar with the name of the Defendant. Mr. Burt also observed a strong chemical odor near 106 East Walnut Street, although he did not get close enough to the residence to determine if it was emanating from the home or the dumpster.

{¶110} "12. Mr. Burt called Melissa K. Davis using a number that he knew to be associated with her work. Ms. Davis answered. Mr. Burt informed her that deputies from the Fairfield County Sheriff's Office were present and wanted to enter her residence. She replied that they could do so.

{¶111} "13. Mr. Burt then gave his phone to Deputy Campbell. Deputy Campbell requested Melissa K. Davis' permission to enter the residence without a warrant. She provided consent for them to do so."

{¶112} In reviewing the legal sufficiency of the evidence to support a verdict by the trier of fact, it is the mind of the trier of fact, rather than the reviewing court, that must be convinced. *State v. Thomas,* 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982). In applying this standard of review, the question of credibility of conflicting testimony and the weight to be accorded certain evidence are matters left primarily to the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

**{¶113}** A reviewing court should not disturb the decision below unless it finds that reasonable minds could not reach the conclusion reached by the trier of fact. *Jenks,* supra, 61 Ohio St.3d at 273.

**{¶114}** The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1997–Ohio–260.

**{¶115}** Based upon the testimonial evidence reviewed above, and conceding the trial court had the best opportunity to weigh the truthfulness and credibility of the witnesses, we do not find the trial court erred in finding Melissa Davis freely and voluntarily consented to the search of the residence.

**{¶116}** Furthermore, upon review, we find Appellant's arguments relative to the constitutionality of R.C. 2933.33 waived, as Appellant failed to raise the arguments before the trial court herein.  In addition, based upon our analysis and disposition set forth above relative to Melissa Davis' consent to the officer's search of the property without a warrant, we find the argument moot.

**{¶117}**   The May 8, 2013 Judgment Entry entered by the Fairfield County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J.  and

Delaney, J. concur